[No. 1875, July 18, 1916.]
[Rehearing Denied December 13, 1916.]
STATE v. RUCKER.

SYLLABUS BY THE COURT.

1. Section 31, Code 1915, makes it the duty of a drover, when the stock of any resident shall intermix with any drove of animals, to immediately cut out and separate such stock from such drove.     P. 277

2. The credibility of witnesses is, in all cases, a question for the jury, and the rule applies, although the testimony of the party or of interested witnesses or of other witnesses is uncontradicted.     P. 278

3. The question of variance between the brand alleged in the indictment to have been upon the alleged stolen animal and the certificate of brand, introduced in evidence upon the trial, will not be considered in the appellate court, where such question was not raised in the trial court. State v. Klasner, 19 N. M. 474, 145 Pac. 679, followed.     P. 279

4. No alleged errors, unless they are jurisdictional, will be considered, except those set out in the motion for a new trial.     P. 280

5. Section 3142, Code 1915, which provides: "When an indictment is found, the names of the witnesses examined before the grand jury, must in all cases be inserted at the foot of the indictment or indorsed thereon before it is presented to the court"— is directory, and it is not error for

the trial court to permit a witness, who testified before the grand jury and whose name was not properly indorsed upon the indictment, to testify, where defendant did not claim or attempt to show surprise or prejudice by reason of the omission of the name of such witness from the indictment.

P. 281

6. Where the jury has an equal opportunity of determining whether a character appearing upon a certificate of brand corresponds with a similar character shown in the indictment, as has a tendered witness, there is no error upon the part of the court in refusing to permit such witness to testify as to whether such characters are the same or dissimilar.

P. 281

Appeal from District Court, Rio Arriba County; E. C. Abbott, Judge.

Sam Rucker was convicted of larceny of cattle, and he appeals. Affirmed.

J. H. CRIST of Santa Fé, for appellant.

H. S. BOWMAN, Assistant Attorney General, for the State.

## OPINION OF THE COURT.

ROBERTS, C. J.—Appellant was tried in the district court of Rio Arriba county, at the June, 1915, term of court, upon an indictment charging him with the larceny of one head of neat cattle, the property of Cipriano Peña. The indictment alleged that the cow in question was branded " C I P" on the left side. Appellant wos found guilty by the jury, and sentenced by the court to serve a term in the state penitentiary and to pay a fine to the state. From this judgment he appeals.

The facts established by the state were: That on the 16th day of June, 1912, appellant was driving a bunch of cattle northward along the public highway at a place called Chupadero, in Rio Arriba county. Cipriano Peña

lived near Chupadero, said place possibly being within the limits of his cattle range. Before he reached Chupadero a man employed by Mr. Peña, Fernando Torrez, accompanied by Leonardo Chavez, joined appellant a half mile or so south of Chupadero, and accompanied him to that place, where appellant stopped with the cattle. At that place he cooked and ate dinner, and while he was so engaged the two men named and Julio Gallegos rode through the herd looking for cattle belonging to Mr. Peña. They found a cow branded with his brand, and Gallegos asked appellant where he got the animal, to which appellant replied that he had purchased her from the Córdovas. Within a few days Peña searched diligently for his animal and failed to find her. Appellant denied this conversation; admitted that the three men visited his camp; denied that he had seen the cow described by them, and stated that at Chupadero, after he and his brother had eaten their dinner, together with two other men named Lee and Houghton, who had joined them while there, he proceeded to and did cut out all the stray cattle in the herd, numbering some eight or ten head. His brother and Lee and Houghton all testified to substantially the same facts, except the three last named stated that they saw the cow described by the state's witnesses, and that she was cut out at that place and started back with the other cattle eliminated from the herd. The cattle inspector who inspected the cattle before their delivery in Colorado testified that he found no cow branded "C I P," or bearing any similar brand; that the only brands found upon the cattle were those disclosed by his inspection certificate, which was produced and offered in evidence.

The indictment was predicated upon that portion of section 1613, Code 1915, reading as follows:

"Any person who shall steal, embezzle or knowingly kill, sell, drive, lead, or ride away, or in any manner deprive the owner of the immediate possession of any neat cattle * * * shall be punished by imprisonment [etc.]."

[1] Section 31, Code 1915, makes it the duty of a drover, when the stock of any resident shall intermix

with any drove of animals, to immediately cut out and separate such stock from said drove. This section was designed to protect the cattle raisers of the state from larceny of their cattle by people passing through the country with herds of cattle and permitting the cattle of others to become intermingled with those being so driven. In such case, without the above statute, it would be, in many instances, impossible to establish the guilty intent of the drover.

In this case appellant argues that the evidence is insufficient to sustain the verdict of the jury. But this cannot be true, if the evidence of the witnesses for the state is accepted as true, and that given by appellant's own witnesses be disbelieved. Accepting the state's evidence as true, we have the facts esatblished: That appellant was driving a herd of cattle through the country. That Peña's animal was found in his herd, and had been driven in said herd for some distance. When confronted with the fact thot he was driving away an animal that did not belong to him, he claimed that he had purchased the animal from one of the Córdovas. All this, if true, established all the elements essential to constitute an offense under section 1613, supra.

[2] Appellant argues, however, that the jury had no right to disbelieve the witnesses who testified in his behalf, to the effect that at Chupadero, immediately after the state's witnesses left, he cut out the "C I P" cow, and the evidence of the cattle inspector, to the effect that at the Colorado line appellant had no cow branded "C I P" in his herd. Appellant, however, in his contention disregards the well-established rule "that the credibility of witnesses is, in all cases, a question for the jury." 38 Cyc. 1518. It would, if appellant's view were to prevail, be almost impossible in any case to secure a conviction, for the defendant in a criminal case could always testify to a state of facts which could not be contradicted by others. The rule applies, although the testimony of the party or of interested witnesses or of other witnesses is uncontradicted. 58 Cyc. 1518. Here the jury saw all the wit-

State v. Rucker, 22 N. M. 275.

nesses and observed their manner and demeanor while testifying, sensed the atmosphere of the trial, and it was within its province to believe or disbelieve the testimony of appellant and his witnesses. Certainly, even from the record, there were facts and circumstances appearing which might tend to cause a reasonable mind to entertain grave doubts as to whether the appellant and his witnesses were testifying to the truth. For example, the cattle inspector's certificate had been changed so as to show more cattle bearing a designated brand than had originally been made to appear. The cattle inspector testified that he made the change, but his labored attempt to explain away admissions theretofore made to the district attorney to the contrary evidently destroyed the value of his testimony with the jury. Likewise, the evidence of Lee and Houghton, who appeared upon the scene immediately after the state's witnesses left, was not very convincing. They were not able to state satisfactorily how they were able to arrive at Chupadero without having met the state's witnesses, or any other person. They attempted to explain the fact by saying they came by an "unused trail," leaving the main road some two or three miles below Chupadero. The jury elected to disbelieve them, and under the facts and circumstances we cannot say that there was an arbitrary disregard of the evidence.

[3] Appellant's next contention is that there is a fatal variance between the allegation of brand in the indictment and the brand as proven on the trial by the certificate introduced in evidence. This question, however, was not raised in the trial court; hence cannot be considered here. State v. Klasner, 19 N. M. 479, 145 Pac. 679.

It is true appellant objected to the admission in evidence of the brand certificate, because it did not correspond with the allegation in the indictment; but he is not here complaining of the action of the court in permitting the brand certificate to go to the jury.

In preparing indictments it is unnecessary to describe the brand found upon alleged stolen animals, and by so

doing the district attorneys may frequently be confronted with questions of variance.

[**4**]     The defendant failed to request the court to charge that it was incumbent upon the state to prove that the brand upon the animal found in defendant's possession was the same brand as that described in the indictment.     It is true he did except to the failure of the court to charge that "the brand, 'C I P,' alleged in the indictment, was a material allegation, and that the proof must show that that was the brand used on the animal in question," but he failed to incorporate this alleged error in his motion for a new trial; hence under the well-established rule, that "no alleged errors, unless they are jurisdictional, will be considered, except those which are set out in the motion for a new trial" (U. S. v. Cook, 15 N. M. 124, 103 Pac. 305; State v. Holloway, 19 N. M. 528, 146 Pac. 1066, L. R. A. 1915F, 922), this question is not here for review.

Whether the brand upon the animal in question corresponded with the brand as alleged in the indictment, and also with the certificate of brand introduced in evidence, was for the jury to determine, under proper instructions from the court, unless the variance was so patent that the court could say, as a matter of law, that the variance existed.     And, even so, it was incumbent upon the defendant to invoke a ruling by the court upon the question of variance by a motion for an instructed verdict, or in some other appropriate manner, before he can here raise the question.     In the case of State v. Klasner, 19 N. M. 474, 145 Pac. 679, we said:

"The courts generally hold that the question of variance, unless raised in the court below, cannot be reviewed in an appellate court."

Appellant insists that the court erred in permitting the brand certificate to be introduced in evidence, because the brand therein exhibited did not correspond with the brand described in the indictment.     The brand described in the indictment was "C I P," while that shown upon the certificate was "C I P."     Whether the middle character of the

latter brand was intended for an "I" or a "slash," as contended by appellant, was for the jury to determine, under proper instructions from the court. As stated, no question is here for review upon the instructions in this regard; hence there is no reversible error shown.

[**5, 6**] Appellant next complains of the refusal of the court to permit him to show by the witness Daggett the custom of stray cattle to intermingle with a drover's herd while driving them through the country, and the practice of such drivers to stop at stated periods and cut them out. The statute, referred to, requires the drover to cut out such cattle immediately, and makes him subject to indictment for larceny upon a failure so to do. Certainly it would not be permissible to invalidate the statute, or render its provisions nugatory by proof of a custom or practice by drovers in contravention of the express provisions of the statute. This was offered, so counsel states, to negative a guilty intent. This could only be negatived by proof of compliance, or bona fide attempt to comply, with the requirements of the statute. Here the defendant stated, as shown by the proof offered by the state, that he had purchased the cow in question from a man named Córdova, which was untrue, and this statement by him, unexplained, certainly was sufficient to establish a guilty intent, if such was required by proof other than the fact that he had the cow in his possession.

Upon the trial the state, over appellant's objection, offered one Julio Gallegos as a witness, who testified that he saw the cow in question in appellant's herd, and that appellant stated to him that he had purchased the animal from one of the Córdovas. This witness, so the record shows, testified as a witness before the grand jury, and his name was indorsed upon the indictment as "Julian." The names "Julio" and "Julian," in Spanish, are not idem sonans; hence the question arises as to whether the statute (section 3142, Code 1915) is mandatory or directory. This section reads as follows:

"When an indictment is found, the names of the witnesses examined before the grand jury, must in all cases be inserted

at the foot of the indictment or indorsed thereon before it is presented to the court."

In many of the states statutory provisions of a somewhat similar import will be found. While different language is employed, the object of all such statutes is to require the indorsement of the names of all the material witnesses upon the indictment, in order that the defendant may know the names of his accusers, and thus be enabled to prepare his defense; in other words, to prevent his being taken by surprise upon the trial, to his prejudice. The courts, as a general rule, hold such statutes directory. Bishop's New Criminal Procedure, § 869a. In some of the states it is expressly provided that witnesses whose names are not so indorsed shall not be permitted to testify, and in others, that the indictment, so failing in this regard, shall be quashed. Here we have no statute prescribing the effect of such omission. To hold that the trial court could not properly permit a witness to testify, whose name had not been so indorsed, in the absence of a showing of surprise or injury to the defendant, would be the placing of form before substance.

In the present case the appellant stated his objection upon the single ground that the witness' name had not been indorsed, as required by the statute. He made no claim that he was surprised or prejudiced by the failure of the state to so indorse the name of the witness, and, indeed, the record in the case fails to disclose any possibility of surprise or prejudice. Every one present at the time of the alleged conversation was present and testified as witnesses in the case, and we fail to see how appellant could have been benefited had the name been indorsed as required.

We conclude that the statute in question is directory; and, where a defendant objects to a witness testifying for the state whose name has not been indorsed upon the indictment, he having testified before the grand jury, he must show surprise or prejudice before the trial court is warranted in excluding the testimony of such witness, or continuing the cause until the defendant can prepare to meet the evidence of the witness.

Appellant complains of the failure of the court to permit him to show by certain witnesses, who had testified to a state of facts which showed that they were experienced cattle men and familiar with the marks and brands used upon animals within the state, that the brand set out in the indictment and that exhibited by the certificate of brand were not the same, thus enabling him to establish a variance between the allegation in the indictment and the proof. In justification of his claimed right he relies upon the cases of Askew v. People, 23 Colo. 446, 48 Pac. 524, and Miller v. Territory, 9 Ariz. 123, 80 Pac. 321. These cases, however, are not authority for the proposition for which he contends. In the former case the court permitted the state to show, by expert testimony, that a portion of a brand remaining upon the hide of an animal was a part of a named brand. In that case the hide from an alleged stolen animal was found with a part of the brand cut out. There remained, however, sufficient of the brand to enable the experienced cattle men to testify as to the original brand upon the animal. But there the court permitted the tesimony as to the brand upon the hide of the animal, placed there by a branding iron. The court said:

"It is well known to all judges of experience in this western country, where animals are branded and turned loose upon the public range, that brands may be accurately deciphered by experts which are unintelligible to those who have not had special skill and experience in observing the same."

The court then proceeds to point out the reason why the testimony of experts is employed in deciphering the brand upon the animal, and says:

"Among other things which experienced stockmen take into consideration in deciphering brands may be mentioned the following: The age of the animal when branded, as the brand enlarges with the browth of the animal; the condition of the branding iron as to the degree to which it is heated when applied to the animal; the length of time of contact of the hot brand with the hide; the age of the animal and the time of the year the hide is removed; and the state of preservation of the hide at the time of the examination. We are satisfied that these are all matters with reference

to  which  witnesses  may  become  expert  and  upon  which
opinions  may  be  given  by  those  qualified  as  the  result  of
experience  and  observation."

But  appellant,  in  this  case,  was  not  calling  for  an  ex-
pert  opinion  as  to  the  brand  upon  the  animal  in  ques-
tion,  but  was  attempting  to  exhibit  to  the  witness  the
certified  copy  of  the  brand,  which  was  composed  of  two
typewritten  characters,  viz.,  "C"  and  "P,"  with  an  ob-
lique  character  made  by  a  pen  and  ink,  and  the  charac-
ters  exhibited  in  the  indictment,  which  likewise  were  writ-
ten  on  a  typewriter.    The  only  matter  which  the  jury
were  to  determine  was  whether  the  character  upon  the
brand  certificate  was  the  letter  "I"  or  some  other  character.
This  they  were  as  fully  capable  of  determining  as  were
the  witnesses  who  testified  that  they  were  familiar  with
the  manner  and  method  of  branding  cattle  and  had  had
long  experience  in  such  matters  and  in  deciphering  brands
upon  animals.    If  some  question  had  been  raised  as
to  the  brand  appearing  upon  the  animal  in  question,
which  could  only  be  determined  by  deciphering  the  brand
upon  the  hide  of  the  animal,  a  different  question  would
be  presented,  because  of  the  many  things  which  might
enter  into  the  deciphering  of  the  same  correctly,  as  shown
by  the  excerpt  quoted  from  the  Colorado  opinion.    Wig-
more  in  his  work  on  Evidence  (volume  3,  §  1918),  in
discussing  the  question  as  to  when  opinion  evidence  is
admissible,  says:

"But  there  is  also  a  third  group  in  which  exclusion  must
take  place,  though  courts  seldom  find  it  necessary  to  point
it  out,  namely,  where  the  witness  would  detail  the  data  of
personal  observation  (and  not  only  mere  inferences),  but  the
tribunal  has  an  equal  opportunity  of  personal  observation."

See,  also,  Jones  on  Evidence,  vol.  2,  §  359  et  seq.

Whether  the  character  upon  the  brand  certificate  was
the  letter  "I"  or  some  other  character  could  be  as  readily
and  easily  determined  by  the  jury  as  by  the  tendered  wit-
nesses;  hence  there  was  no  error  in  excluding  the  evi-
dence.

Appellant complains of the refusal of the court to give his requested instruction No. 1, but he cannot complain of this refusal, because the court, by its instruction No. 10, which was even more favorable to the accused than the requested instruction, covered the same ground.

For the reasons stated, the judgment will be affirmed; and it is so ordered.

HANNA and PARKER, J.J., concur.

---

[No. 1880, November 21, 1916.]
[Rehearing Denied December 21, 1916.]
STATE v. BELISLE.