Commonwealth *v.* Attarian, Appellant.
Commonwealth *v.* Tashjian, Appellant.

Argued September 28, 1937.

Be-
fore KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD,
PARKER, JAMES and RHODES, JJ.

*Edward Watson,* with him *Harry G. Tarrington* and *Wm. H. Redheffer, Jr.,* for appellants.

*Charles F. Kelley,* District Attorney and *John P. Boland,* Assistant District Attorney, for appellee, were not heard.

OPINION BY KELLER, P. J., November 10, 1937:

The statement of questions involved in this appeal—which limits the scope of our review, (Rule 50)—raises two questions which may be restated, in an abridged form, as follows:

1—Whether, on the trial of two persons for adultery with each other, the uncorroborated testimony of a private detective, hired by the wife of the male defendant, as to facts which, if true, establish the guilt of the defendants, is sufficient to take the case to the jury, where the defendants deny the charge and are supported, in some points of their denial by other positive evidence?

2—Whether, where a verdict of guilty is rendered on such testimony, it should be set aside and a new trial granted?

1—The weight to be given testimony is ordinarily a matter for the jury, not the court, in criminal, as well as in civil, cases; and if a jury, on consideration of all the evidence, is satisfied beyond a reasonable doubt, from the uncorroborated testimony of a private

detective, that the defendants committed adultery at the times and in the place testified to by him, they may find them guilty, notwithstanding the defendants positively deny his testimony and produce outside evidence to support their denial. The attending circumstances may lead the jury to believe him rather than the defendants and their witnesses. There is no rule of law or public policy that classes a private detective along with the confessed accomplice of a criminal and requires the jury to be warned that it is not safe to convict on his uncorroborated testimony. His credibility, as that of all witnesses, is for the jury. Extracts from opinions in divorce cases—where, it must be remembered, it is our function to determine the facts as well as apply the law to the facts so found—in which we have stated our reasons for not accepting the evidence of certain private detectives who testified as witnesses, are not to be adopted as expressions of a general ruling by us that their testimony, of itself, is unworthy of belief and must be corroborated in order to support a conviction. We held the contrary in *Naylor v. Naylor,* 59 Pa. Superior Ct. 547, 561, where the "master concluded his detailed recital of the testimony, not with a distinct finding that the facts testified to by libellant's witnesses were not sufficient to warrant the divorce (he could not have found that) nor with a finding that he disbelieved their testimony, but with this statement: 'His reason, however, for recommending that the prayer of the libel be dismissed is based upon the fact that the testimony on which he is asked to make a finding in favor of the libellant and against respondent, consists mainly of the testimony of hired detectives.'" President Judge RICE speaking for this Court said: "This was not a valid reason for refusing the divorce. There is no fixed rule of law or public policy which forbids the granting of a divorce upon the testimony of hired detectives. There are good reasons why such testimony should be scrutinized with

great care, and according to dicta in textbooks and decisions it should be regarded with suspicion. The nature of the occupation and the interest which the hired detective has, arising out of his natural desire to please his employer, are reasons why a conscientious and prudent judge will scrutinize his testimony with great care before making it the basis of a decree dissolving the marriage tie. But if by reason of its volume, its clear, distinct and positive nature, the harmony of each of its parts with the others, and its harmony as a whole with the other facts in the case, the testimony induces an abiding conviction of its truth, it is impossible to see why the court should not act upon it." The same thing may be said of a criminal prosecution for adultery, with the addition that in such case in order to convict the defendant the jury must, from all the evidence, be satisfied of his guilt beyond a reasonable doubt. Each case must be judged on its own facts. In the present case the evidence of the detective, Rodgers, was, if true, conclusive of the defendants' guilt. Whether it was true or false was a question of fact for the jury. Furthermore, while not corroborated on the facts establishing the defendants' adultery, it was amply corroborated by other evidence of the intimate association between the defendants and their opportunity to commit adultery if the adulterous disposition was present.

2—Whether a new trial shall be granted because the verdict is against the evidence, or the weight of the evidence, is generally a matter for the trial judge and the court below rather than an appellate court. Their opportunities for judging the credibility of the witnesses and determining the weight to be given their testimony is usually better than ours, and we do not interfere with their discretion in refusing a new trial on these grounds except in clear cases where we are satisfied a miscarriage of justice would otherwise result. The court below, after giving full consideration

to the motion for a new trial on the grounds above-mentioned, expressed its conviction that the verdicts were just and warranted by the evidence. Our review of the evidence does not convince us that the court was guilty of a clear abuse of discretion in refusing a new trial on these grounds, or that the conviction of the defendants amounted to a miscarriage of justice.

One other point, not included in the statement of questions involved, was pressed upon us at the argument. It is now urged that the trial judge committed error, calling for a new trial, because he did not specifically charge the jury that they should scrutinize the testimony of Rodgers, the private detective, with great care and be cautious about accepting it because of his interest in the controversy. He was not asked by the appellants so to charge. Their position, on the trial, was that a conviction could not rest on the testimony of Rodgers, unless corroborated by other evidence as to the fact of adultery; and their points were drawn so as to require a directed verdict for the defendants on that ground, which would have been unwarranted by law. But an impartial review of the charge will show that while the judge did not, in precise words, instruct the jury to scrutinize the testimony of the private detective with care because of his interest, the charge as a whole was to that effect, and could have left no doubt in the minds of the jury as to the care to be used by them. Early in the charge he said: "Now the main testimony on the part of the Commonwealth in this case is by a gentleman by the name of William J. Rodgers. Mr. Rodgers testified he is a private detective, that he was employed by Mrs. Tashjian, the wife of one of these defendants, for the purpose, I presume, to secure evidence against him, to determine whether or not he had been unfaithful. I take it that was the intention. I will say to you that this case hangs entirely on the testimony of this witness as to their guilt. If you determine these two defendants

guilty of the crime with which they are charged you would have to find them guilty on the testimony, practically uncorroborated, of this one witness." After reviewing the testimony and explaining fully that the defendants are presumed to be innocent, that the burden of proof rested on the Commonwealth and never shifted and that this burden required the Commonwealth to prove the guilt of the defendants beyond a reasonable doubt—that if on consideration of the testimony on both sides "there comes into your minds a reasonable doubt of the guilt of these defendants, you will give them the benefit of that doubt and acquit them," he instructed them, with some detail, to weigh the testimony carefully and consider its probability, and then said: "You will also take into consideration the interest which the witnesses have in the outcome of this law suit. Now we would not say to you as a matter of law that you must not believe any of these witnesses because of their interest which they may have in the outcome of this law suit, because some men will tell the truth regardless of their interest. But the law recognizes the fact that practically all of us, we probably could say all of us, are inclined to put our own side in its own best light, to put our best foot forward ......I do not say you must not believe these witnesses because of interest, but in determining the credibility of the witnesses and the weight to be given their testimony you will take into consideration to what extent their testimony might have been colored by interest ...... Mr. Rodgers, the private detective, I would say is an interested witness. He is paid to do a certain thing. Now we would not say in his zeal to earn his money he may have overstepped more or less, we will not say that he did, we do not say because he is a hired detective you should not believe him. We are leaving that to you. The Court would not intimate to you that you should not believe any witness. That is for you in your deliberations. But you will take into con-

sideration the fact that he is a private detective hired by this woman. He may be telling the truth. We are not saying he is not. But that is one of the elements you will take into consideration in determining the weight you will give his testimony, and his credibility."

We think this was sufficient and adequate in the circumstances.

The judgment in each case is affirmed.