217 P.2d 854

**STATE v. EDWARDS.**

No. 5245.

Supreme Court of New Mexico.

May 1, 1950.

Caswell S. Neal, Carlsbad, for appellant.

Joe L. Martinez, Attorney General, Walter R. Kegel, Ass't Attorney General, for appellee.

COMPTON, Justice.

The defendant was convicted of the crime of voluntary manslaughter in the unlawful killing of R. E. Walling, Jr., his stepson. He appeals from the judgment following the verdict.

The questions for our determination are (a) whether the testimony of a witness should be excluded simply because his name, previous to trial, had not been endorsed upon the information charging the offense; and (b) whether testimony taken on voir dire in the absence of the jury but read to it without objection, is a denial of the right of trial by jury.

Defendant and the deceased's mother were married in September, 1942. It was an unhappy venture from the start. It appears that difficulties between the defendant and the deceased marred the marital status of the parties and which resulted in numerous divorce actions by the wife. A suit was pending at the time of the homicide. On November 30, 1948, defendant and his wife agreed to meet that evening at the home of defendant's sister in an effort to effect a reconciliation. At the time they were living apart and the deceased and his wife were to accompany his mother. Defendant's wife failed to keep the engagement and about 9:00 P. M., defendant went to a near-by restaurant and requested an employee, Miss Gilmore, to call a taxi, the taxi driven by the deceased. Shortly thereafter the deceased responded to the call, he and a passenger occupying the front seat. The defendant got into the rear seat immediately behind the driver. The deceased then inquired of the defendant, "Where to, Allen?". The defendant responded, "410 South Cypress". When the passenger had been discharged and while they were alone in the taxi, the following version as to what occurred, is given by defendant:

"A. After this man got out of the cab I asked Mr. Walling what was wrong that

him and his mother didn't come over. He then told me that we would never go back together. I told him well, we could go back together if he could keep his nose out of our business. He then told me, he said, if you and her ever live together it will be over my dead body, about that time that car was turned loose and as he jumped back and turned to the right, I was sitting next to the glass on the left hand side of the car, I felt something flick by my shirt collar, my shirt was open, it hit me. Well, I then pushed him back and as he fell over there he said 'I'll kill that b—' used those words there and was reaching for the glove compartment of that car, then is when I shot.

"Q. Do you know how many times you shot?

"A. I do not.

"Q. Why did you shoot Mr. Walling?

"A. Because he said I'll kill him and he cut my throat there."

Defendant was armed with a .25 caliber automatic pistol which held nine bullets. From the rear seat he fired six shots, three of which entered the back of the deceased and one his arm below the shoulder. The defendant then went to his room at 410 South Cypress and shot himself, attempting suicide. An unopened knife was found in the pocket of the deceased, upon which there were stains resembling blood. The pistol and knife were sent to the Federal Bureau of Investigation to determine whether the defendant's injury and the death of the deceased were caused by the same means and whether the stain on the knife was blood. At the trial, Robert A. Frazier, a special agent from the laboratory division of the Federal Bureau of Investigation and whose name previously had not been endorsed upon the information, was called as witness for the State and over the objection of the defendant testified that the stain upon the knife was not blood. The admission of this evidence is assigned as error. However, no effort was made to obtain a postponement or continuance to challenge the unexpected testimony. Previously, the defendant had been informed that the pistol had been sent for a laboratory test and there was an oral agreement of some kind entered into between the district attorney and defendant's counsel. Defendant seriously contends that it was stipulated that the witness from the Federal Bureau would not be called for any purpose. It is as seriously contended by the district attorney that the agreement related solely to the identity of the gun.

Counsel for defendant perhaps is correct in his contention but there is nothing to show what the facts are, save the statements. It would be a rather novel way to establish a record, to do so upon conflicting statements of counsel. We recognize no such rule. The transcript of

the record is established by the certificate of the Clerk under the seal of the Court. Section 19-201, 1941 Comp. Our Rule, 14 (1). So, whatever may have been the agreement, it is not before us.

Section 42-647, 1941 Comp., provides: "When an indictment or information is filed, the names of all the witnesses or deponents on whose evidence the indictment or information was based shall be endorsed thereon before it is presented, and the district attorney shall endorse on the indictment or information at such time as the court may by rule or otherwise prescribe the names of such other witnesses as he purposes to call. A failure to so endorse the said names shall not affect the validity or insufficiency of the indictment or information, but the court in which the indictment or information was filed, shall, upon application of the defendant, direct the names of such witnesses to be endorsed. No continuance shall be allowed because of the failure to endorse any of the said names unless such application was made at the earliest opportunity and then only if a continuance is necessary in the interest of justice."

The statute is directory. State v. Rucker, 22 N.M. 275, 161 P. 337. Whether names of witnesses may be endorsed during trial is a matter resting within the sound discretion of the court. It is not enough that a defendant claim surprise or prejudice in the calling of an adverse witness or one whose name does not appear upon the information charging him with crime. Nor is the mere admission of testimony of such witness, error; rather, error follows from a denial of an opportunity to rebut the objectionable evidence. When it is made to appear that testimony of the witness is such that it cannot be reasonably anticipated, postponement or continuance of the hearing is available to a defendant to meet it and if application therefor is denied, prejudice being shown, reversal will follow. We see nothing, however, in the statute directing the court to exclude the testimony of such witness.

Similar questions were before us in State v. Rucker, supra; State v. Alarid, 40 N.M. 450, 62 P.2d 817; State v. Grice, 47 N.M. 197, 138 P.2d 1016. And courts of other jurisdictions follow the doctrine. State v. Urban, 117 Kan. 130, 230 P. 77; People v. Powers, 203 Mich. 40, 168 N.W. 938; Wilson v. State, 120 Neb. 468, 233 N.W. 461; State v. Marty, 52 N.D. 478, 203 N.W. 679; State v. Cherrington, 34 S.D. 562, 149 N.W. 421; Shaddix v. State, 90 Tex.Cr.R. 431, 235 S.W. 602; Thomas v. State, 161 Ark. 644, 257 S.W. 376; Grandbouche v. People, 104 Colo. 175, 89 P.2d 577; State v. Nolan et al., 31 Idaho 71, 169 P. 295; State v. Sweeney, 135 Wash. 276, 237 P. 507.

The defendant called the witness, Jack McGarry, for the purpose of impeaching

certain witnesses who had testified for the State. The testimony of the witness was taken on voir dire in the absence of the jury. It was then tendered by the defendant and read to the jury without objection. The defendant now claims that he has been denied the right of trial by jury. In this respect the record discloses the following:

"The Court: When the jury is returned to the courtroom Mr. Reporter, will you read that part of the testimony beginning with the statement 'Your name is—' and ending with the last question before the one that was asked about 'did he appear to be rational'.

"Mr. Neal: Yes, that is agreeable.

"The Court: Bring in the jury.

"Mr. Neal: Will the court tell the jury what this is Your Honor so they will understand?

"The Court: Gentlemen, this is a tender of proof made in your absence. The reporter will read back the notes exactly as the tender was made."

Counsel having lead the trial court into the alleged error cannot now complain of it. Gillett v. Chavez, 12 N. M. 353, 78 P. 68. Defendant argues that he was merely assenting to the ruling of the court on the admission of certain evidence, not that the testimony be read to the jury. This argument is not convincing as the ruling clearly embraces more. Aside from sustaining the tender, the court directed the reporter to read the testimony taken in the absence of the jury; whereupon, counsel for defendant announced that it was agreeable. Moreover, when the jury returned, counsel for defendant requested the court to inform the jury concerning the matters before it. The court complied, again directing the reporter to read the testimony taken in their absence. It does appear that counsel previously had suggested to the court that he was entitled to examine the witness before the jury upon matters testified to upon voir dire, but he did not pursue the matter when the jury returned. Whatever may have been his understanding or intention, when it appeared that the testimony was to be read to the jury, it was his duty, in some appropriate manner, to question the action of the court and invoke a ruling thereon. A defendant must see that the record is kept and certified so as to present the point which he desires the court to review. Section 19-201, 1941 Comp. Our Rule 20 (2). Blacklock v. Fox, 25 N.M. 391, 183 P. 402; State v. Nuttall, 51 N.M. 196, 181 P.2d 808.

The judgment will be affirmed and it is so ordered.

LUJAN, SADLER and McGHEE, JJ., concur.

BRICE, C. J., not participating