469 P.2d 529

**STATE of New Mexico, Plaintiff-Appellee,**

**v.**

**Arthur MAES and Emma Felix, Defendants-Appellants.**

**No. 409.**

Court of Appeals of New Mexico.

April 17, 1970.

Warren O. F. Harris, King & Harris, Albuquerque, for appellant Maes.

Ramon Lopez, Albuquerque, for appellant Felix.

James A. Maloney, Atty. Gen., Santa Fe, F. Stephen Boone, Asst. Atty. Gen., for plaintiff-appellee.

## OPINION

WOOD, Judge.

Each defendant was convicted of two unlawful sales of heroin. Both appeal.

The issues: (1) lack of advice of rights when the accusatory stage was reached; (2) use of a surprise witness; (3) admissibility of two recordings; (4) sufficiency of the evidence; and (5) improper communication with the jury and misconduct of a juror.

### Lack of advice of rights.

An informer purchased heroin on successive days. Maes claims he should have been advised of his rights—the Miranda warnings, Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966)—when the accusatory stage was reached. He asserts the accusatory stage was reached when the police and the informer made arrangements for the informer to make the first purchase. He asserts that if the accusatory stage had not been reached at the time of the first purchase, certainly it had been reached at the time of the second purchase.

The contention is answered by State v. Anaya, 81 N.M. 52, 462 P.2d 637 (Ct.App. 1969), which states:

"* * * Defendant was neither in custody, nor under indictment. He was not being interrogated. His freedom of action had not been interfered with in any way. The adversary system had not begun to operate against defendant. The claim that he should have been given the *Miranda* warnings immediately prior to selling the heroin to the informer is without merit." (Citations omitted) State v. Tapia (Ct.App.), 81 N.M. 365, 467 P.2d 31, decided March 13, 1970; State v. Lindsey, 81 N.M. 173, 464 P.2d 903 (Ct.App.1969).

### Use of a surprise witness.

The first witness called by the State was the informer. Defendants objected to his testimony, claiming surprise. The District Attorney's office had issued a subpoena for witnesses. The informer's name was not included among the names listed. Defendants moved for a mistrial, claiming

they were entitled to know, in advance of trial, the names of the witnesses for the State.

■ Defendants stated: "We are basing our objection on Exhibit No. A and would like to introduce this in evidence." Exhibit A is never identified, but from the context of the argument to the court, we gather the exhibit was the subpoena. The record does not show the court ever ruled on the offer of this exhibit. Our view, however, is that the argument based on this exhibit is misdirected. We know of no requirement that the District Attorney list all of the State's witnesses in a subpoena.

Section 41-6-47, N.M.S.A.1953 (Repl. Vol. 6) states that names of witnesses are to be endorsed upon the indictment or information. The informer's name was not included among the names endorsed upon the indictment in this case. Defendants' objection is that since the informer's name was not among those listed, they were surprised when the informer was called to the witness stand.

State v. Edwards, 54 N.M. 189, 217 P. 2d 854 (1950) states:

"* * * It is not enough that a defendant claim surprise or prejudice in the calling of * * * one whose name does not appear upon the information charging him with [the] crime. Nor is the mere admission of testimony of such witness, error; rather, error follows from a denial of an opportunity to rebut the objectionable evidence. When it is made to appear that testimony of the witness is such that it cannot be reasonably anticipated, postponement or continuance of the hearing is available to a defendant to meet it and if application therefor is denied, prejudice being shown, reversal will follow. We see nothing, however, in the statute directing the court to exclude the testimony of such witness."

■ We have conflicting statements of counsel as to whether defendants were surprised when the informer was called as a witness. The record is not established by conflicting statements of counsel. State v. Edwards, supra. Disregarding counsels' statements, there is nothing showing surprise. However, we will assume the defendants were surprised.

Maes asserts the defendants moved for a continuance. No such motion appears in the record. The only motion was for a mistrial. However, we will assume the motion for mistrial was understood as a motion for a continuance.

■ On what basis is a continuance to be granted? When the surprise testimony cannot reasonably be anticipated and defendant seeks the continuance in order to rebut the surprise evidence. State v. Edwards, supra. The State asserts the record shows the defendants presented testimony at trial which rebutted the informer's testimony. We do not consider this contention.

■ Defendants' arguments to the trial court went only to the omission of the informer's name; their surprise. Their motion was based only on these two items. There is nothing indicating the informer's testimony could not be reasonably anticipated. Further, the question of rebutting the informer's testimony was never mentioned to the trial court. Since no claim is made that the testimony could not be reasonably anticipated and since defendants never asserted they desired a delay in order to rebut the surprise testimony, defendants' claim that the trial court erred in denying their motion is without merit. State v. Edwards, supra.

*Admissibility of two recordings.*

At the time the informer made each of his purchases, he had an electronic device concealed on his person. This device transmitted sounds to a receiver in a police car; the sounds were recorded on tape.

Two tape recordings were identified as true and accurate recordings of the conversations which occurred at the times of the two purchases. Defendants contend the

two tapes were erroneously admitted as evidence—they assert they were victims of an illegal search and seizure and that their privilege against self-incrimination was violated.

Defendants rely on Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L. Ed.2d 576 (1967). There, the government, without a warrant, electronically listened to a telephone conversation. None of the parties had consented to the intrusion. The intrusion was held to be an illegal search and seizure. Our facts are different; the informer was a consenting party.

Defendants also rely on United States v. White, 405 F.2d 838 (7th Cir. 1969), cert. granted 394 U.S. 957, 89 S.Ct. 1305, 22 L.Ed.2d 559 (1969). Although there was a consenting party in *White*, supra, it was held there had been an illegal search and seizure as to the non-consenting party. We express no opinion as to the correctness of this decision because again, there is a factual difference. In *White*, supra, the informer was not called to testify. In holding the overheard conversations were not admissible, the court points out the overheard conversations were not offered in corroboration of the informer's testimony. Here, the tapes were admitted as corroboration of the in-court testimony of the informer.

■ The informer having testified as to the conversations, the tapes were admissible to corroborate the informer's testimony. Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); On Lee v. United States, 343 U.S. 747, 72 S. Ct. 967, 96 L.Ed. 1270 (1952); United States v. Kaufer, 406 F.2d 550 (2nd Cir. 1969), affirmed 394 U.S. 458, 89 S.Ct. 1223, 22 L.Ed.2d 414 (1969); Dancy v. United States, 390 F.2d 370 (5th Cir. 1968); Holt v. United States, 404 F.2d 914 (10th Cir. 1968), cert. denied 393 U.S. 1086, 89 S.Ct. 872, 21 L.Ed.2d 779 (1969).

■ Introduction of the tapes, for corroboration, in our opinion, does not violate constitutional provisions as to search and seizure or self-incrimination. As stated by Justice White, concurring in Katz v. United States, supra:

"When one man speaks to another he takes all the risks ordinarily inherent in so doing, including the risk that the man to whom he speaks will make public what he has heard. The Fourth Amendment does not protect against unreliable (or law-abiding) associates. * * * It is but a logical and reasonable extension of this principle that a man take the risk that his hearer, free to memorize what he hears for later verbatim repetitions, is instead recording it or transmitting it to another. * * *"

Here, the informer had testified to the conversations on direct examination. On cross-examination, his credibility had been severely attacked, not only by the fact that the informer may have been under the influence of heroin when he made the purchases, but by questioning as to the details of his conversations with the defendants and his purchases from them. In the light of this possibly successful attack on the informer's credibility, it was logical for the State to offer the tapes in corroboration of the informer's testimony. The admission of the tapes was not error.

*Sufficiency of the evidence.*

Two contentions are made.

First, defendants assert that the "main evidence" against them was the testimony of the informer. Relying on Lujan v. United States, 348 F.2d 156 (10th Cir. 1965), cert. denied 382 U.S. 889, 86 S.Ct. 179, 15 L.Ed.2d 125 (1965), they assert an informer's testimony must be corroborated. They contend that the evidence (including the tapes) failed to corroborate the testimony of the informer.

■ The State concedes there must be corroboration, but claims there is corroboration. We agree there is corrobora-

tion, not only by the tapes, but by the testimony of the officers who provided the informer with the money to buy the heroin, searched him before and after the purchases, and followed him to the residence where the purchases occurred.

■ The fact of corroboration disposes of the issue as presented by the parties. This disposition, however, is insufficient because it rests on the concept that corroboration is required. That is not the law in New Mexico. Nor, in our opinion, does Lujan v. United States, supra, so hold.

An issue in Lujan v. United States, supra, was the weight or credit to be given the informer's testimony. It was held that credibility was to be determined by the jury under proper instructions. The statements concerning corroboration are in reference to the evaluation made by the jury of the informer's testimony. We do not understand that decision to hold the evidence is insufficient to go to the jury absent corroboration of the informer's testimony.

■ In New Mexico, a defendant may be convicted on the uncorroborated testimony of an accomplice. State v. Gutierrez, 75 N.M. 580, 408 P.2d 503 (1965); State v. Turnbow, 67 N.M. 241, 354 P.2d 533, 89 A.L.R.2d 461 (1960) and cases therein cited. Further, a defendant may be convicted on the uncorroborated testimony of the victim of the crime. See State v. Gutierrez, supra. The same rule applies here; the defendants may be convicted on the uncorroborated testimony of the informer. See Lott v. United States, 230 F.2d 915 (5th Cir. 1956), cert. denied 351 U.S. 953, 76 S.Ct. 848, 100 L.Ed. 1477 (1956); Commonwealth v. Attarian, 129 Pa.Super. 31, 194 A. 776 (1937); State v. Batson, 107 S.C. 460, 93 S.E. 135 (1917). In each instance—accomplice, victim or informer—the issue is the credibility of the witness. Credibility is to be determined by the jury under proper instructions. See Lujan v. United States, supra; State v. Turnbow, supra.

■ Second, defendants claim the State failed in its burden of proof. Defendants were convicted of possession of a narcotic drug which they unlawfully sold. Section 54-7-14, N.M.S.A.1953 (Repl.Vol. 8, pt. 2). For possession, the State must prove physical or constructive possession of the object, with knowledge of the object's presence and narcotic character. State v. Giddings, 67 N.M. 87, 352 P.2d 1003 (1960). "Possession" means the care, control and management on the occasion in question. State v. Giddings, supra; see State v. Garcia, 76 N.M. 171, 413 P.2d 210 (1966).

Defendants claim possession was not proved. Maes claims there is no proof that he intended to transfer possession of heroin or that he received money for the transfer. The claims are without merit.

On the first sale, the informer said he wanted to buy a "cap" of heroin. Felix went to the kitchen, returned with a balloon containing "caps," and handed it to Maes. Maes delivered the one "cap" being purchased. The informer paid Felix. On the second sale, the informer wanted to buy two "caps." It is not clear who physically handed the heroin to the informer, but he handed the money to Maes. During both transactions there was talk of the informer having a "fix" on the premises. The defendants were living together; the informer's conversation during the purchases was with both of them. According to the informer, he asked Felix about her pushers and " * * * she said that after they finished selling that round they weren't going to sell anymore because there was too much heat."

■ We have not attempted to review all the evidence. The foregoing establishes care, control and management on the part of both defendants for each transaction; that the object possessed by them was heroin and they knew it; that possession was transferred; and the transfer was for money.

*Improper communication with the jury and misconduct of a juror.*

(a) *The asserted improper communication.*

After the jury had been deliberating approximately two hours, it sent a note to the judge informing him " * * * they were ready to return a verdict but that one of the jurors [identified to the judge] was afraid that people would take reprisals against them. The Jury was told to come in and to return a verdict. They did return a verdict finding both defendants guilty on both counts. * * * " After the verdicts were returned, the judge talked to the juror who feared reprisals. This conversation was not in the presence of defendants or their attorneys.

Defendants claim they were prejudiced when the trial judge answered the note of the jury and in talking to the juror after the verdicts were received. We disagree.

 The question, under our State standard, is whether the communication resulted in prejudice to the defendants. " * * * [W]here it affirmatively appears that the defendant was not prejudiced by the communication between [the] court and jury, it will not be held to be reversible error." State v. Costales, 37 N.M. 115, 19 P.2d 189 (1933). See State v. Beal, 48 N.M. 84, 146 P.2d 175 (1944).

Under federal standards of due process, any unauthorized communication with a juror is presumptively prejudicial. State v. Gutierrez, 78 N.M. 529, 433 P.2d 508 (Ct.App.1967).

 The record affirmatively shows no prejudice and overcomes the presumption of prejudice. The jury was "ready to return a verdict." It informed the judge of this fact and, in addition, that one juror feared reprisal. The judge said no more than "return a verdict." This was done. Certainly no prejudice resulted from the fact that the jury was ready to return a verdict, the judge told it to do so, and it did.

Prior to the return of the verdict, the judge was informed that one juror feared reprisal, but no communication was made to the juror about this possibility. After the verdict was received, the conversation with the one juror could not prejudice the verdict already received. There is no merit to the claim concerning the communication. Compare State v. McFerran, 80 N.M. 622, 459 P.2d 148 (Ct.App.1969); State v. Gutierrez, 78 N.M. 529, 433 P.2d 508, supra.

(b) *The asserted juror misconduct.*

In talking to the juror after the verdicts were received, the juror stated " * * * that she was concerned about reprisals because she didn't realize until the case started that a lot of the people who were in attendance in the courtroom, including one of the defendants, had been known to her from years past, during school days, and she was quite concerned about the fact that they might take reprisals against her because she lives in the same area where some of these people live. * * * " .

 Defendants' objection, made to the trial judge after the verdicts were returned, did not come too late. The juror's knowledge was unknown to them until that time. See Territory v. Abeita, 1 N.M. (Gild.) 545 (1873) (also found in Vol. 36 of Pac.States Reports). Defendants were entitled to an impartial jury, State v. McFall, 67 N.M. 260, 354 P.2d 547 (1960), and they would not have had an impartial jury if one of its members served while concealing bias, State v. Sims, 51 N.M. 467, 188 P.2d 177 (1947).

Defendants seem to assert that the juror involved here concealed bias or prejudice against them because upon questioning on voir dire, she did not reveal that she knew one of the defendants. The voir dire is not in the transcript. We do not know the questions asked, or the responses of this juror. All that we have is her statement that she didn't realize she knew one of

**556**

the defendants until after the trial had started. There is no factual basis for this contention.

The defendants claim the juror was prejudiced because she didn't reveal that she knew one of the defendants until the jury was ready to return a verdict. Further, that the juror was necessarily prejudiced against them because she feared reprisal after she recognized one of the defendants. On this basis they claim the trial court should have granted a mistrial. We disagree.

The trial court has the duty of seeing that there is a fair and impartial jury. In doing so it must exercise discretion. The trial court's decision will not be disturbed unless there is manifest error or a clear abuse of discretion. State v. Verdugo, 78 N.M. 762, 438 P.2d 172 (Ct.App. 1968).

In denying the motion for mistrial, the judge stated " * * * [C]ounsel will agree that after we started there was quite a group of people that stayed in the Courtroom and it was a lot of those people I think she [the juror] was more concerned with than the defendants, but I don't see how that is going to prejudice the defendants in any way. It probably helped them to have a juror that was concerned about their fate in the case. In spite of that, she still voted for a guilty verdict." The foregoing shows the judge was of the opinion that the juror in question was fair and impartial. There is nothing to indicate the contrary, and therefore nothing to support manifest error or abuse of discretion. Defendants' claim is without merit. Compare State v. Sanchez, 79 N.M. 701, 448 P.2d 807 (Ct.App. 1968); State v. Verdugo, supra.

The judgments and sentences are affirmed.

It is so ordered.

SPIESS, C. J., and HENDLEY, J., concur.