## Southern Surety Company of New York v. Heyburn.

(Decided June 10, 1930.)

W. W. DOWNING and WM. F. CLARKE, Jr., for appellant.

PETER, LEE, TABB, KRIEGER & HEYBURN for appellee.

OPINION OF THE COURT BY COMMISSIONER STANLEY—
Reversing.

The appellant, Southern Surety Company of New York, issued its policy of insurance to the appellee, William Heyburn, by which it undertook to indemnify him against loss by reason of legal liability for damages on account of bodily injuries accidentally sustained by any person, subject to the conditions and limitations stated in the policy. One of the conditions was the following:

"Whenever the Assured or Bailees shall have knowledge or receive information of any occurrence which might result in a claim against the Assured or Bailees for damages on account of bodily injury sustained or for any other cause, and for which claim they might expect indemnity under this policy, then the Assured or Bailee shall give immediate written notice to the Company or its duly authorized Agent. . . . It is understood and agreed that between the Company and the Assured and/or any person claiming indemnity under this policy, that a literal and strict compliance with the requirements of this Condition 'D' is the essence of the contract and a condition precedent to recovery under this policy."

In May, 1926, the insured's automobile, driven by his chauffeur, struck Miss Nell McBride at a crossing in Louisville, knocking her ten or fifteen feet to the street. Her clothing was soiled and perhaps torn. Mr. Heyburn offered to take her to the hospital or to her home and to call a physician. She at first accepted his offer to take her home, but says as she was about to enter his automobile she remembered that her sister, who had been sick, would likely see her being assisted and brought home,

and in fear that it would shock and alarm her, she suggested that she would go across the street to a grocery as she knew the people there. Mr. Heyburn assisted or accompanied her to the store, but she assured him she was not hurt and declined to give him her name on that account. She did not request Mr. Heyburn's name and it does not appear that he gave it to her. The young lady, after Mr. Heyburn's departure, felt the effects of a nervous shock, but was able to walk to her home a square away without assistance. It developed that she had sustained injuries which incapacitated her for several months.

In the following August Miss McBride learned that it was Mr. Heyburn's car which had struck her, and he was advised of the development of her injuries. He very promptly notified the insurance company of the fact of the accident and the assertion of a claim against him. Later, when a suit was filed against him for damages, he sent the summons to the company in accordance with the terms of the policy. The insurance company declined to recognize its responsibility on the ground that the insured had not complied with the terms of the policy above quoted. Thereupon Mr. Heyburn employed counsel to defend the suit and later compromised it by paying Miss McBride $900 and the court costs. He then instituted this suit against the company to recover what he had paid, plus attorneys' fee, an aggregate of $1,183. The company rested its defense upon the breach of the foregoing condition in the policy.

A verdict was returned in favor of the company, but it was set aside by the trial court, and on the next trial a jury found for the plaintiff. The company prosecutes an appeal from the judgment, and also brings up the record of the first trial. It is insisting that on both trials it was entitled to a peremptory instruction; if not, that the court erred in setting aside the first verdict, and also erred on the last trial in instructing the jury.

The decision of the case must rest upon the construction and application to be given the quoted condition of the policy, in two respects, that is: (1) as to "any occurrence which might result in a claim"; and (2) as to "immediate written notice."

There is no difficulty encountered in construing the term "immediate notice." It is an essential and controlling provision in policies of this character; but quite

742

obviously it is not an arbitrary term to be given the sense of instantaneous. All authorities agree that it is intended to be and is to be construed as notice within a reasonable time, dependent upon the facts and exigencies of each particular occasion. When the facts are not in dispute it becomes a matter of law as to what that reasonable time is. Jefferson Realty Co. v. Employers' Liability Corporation, 149 Ky. 741, 149 S. W. 1011; 14 R. C. L. 1329. There may appear circumstances which would excuse sooner notice; but it is not nor could it be seriously contended that the lapse of three months in this case is a reasonable time. (National Concrete Construction Co. v. Travelers' Ins. Co., 176 Mass. 121, 57 N. E. 350), unless the computation is to begin when the insured definitely learned that the pedestrian had been injured and a claim was being asserted against him—a construction of this term that was denied in Aronson v. Frankfort Acc. & Plate Glass Ins. Co., 9 Cal. App. 473, 99 P. 537.

The reported cases of this character, which we have noted (excepting only the Aronson case), construed conditions in policies which required the insured to give notice of "any accident" or "occurrence of an accident covered by the policy." No exceptions as to any kind of accident was made nor the possibility of a claim regarded. As to these conditions, the general rule has been established that the insured is not required to report trivial accidents which result in latent injuries or petty wounds, and there was no reasonable ground to believe at the time that an injury had been received.

But the term we are dealing with is different. It is, *"any occurrence which might result in a claim"* being asserted. Every accident is an occurrence. But not every occurrence is, strictly speaking, an accident. It should, however, in this connection be construed as synonymous with an accident or kindred act—an unforeseen occurrence resulting in bodily injury to a person other than the one indemnified which may give rise to a claim against the insured. However, the contract of insurance is silent as to who shall be the judge of whether the occurrence or accident was such as "might result in a claim."

It is to be readily admitted that in cases resting upon policies of indemnity of this character the interpretation should be more rigid or exact and the rule should be more strictly enforced than in cases resting upon fire

insurance policies or ordinary accident policies covering disability or injury of the person insured. In the latter cases the liability becomes fixed immediately upon the occurrence, while in this class the very nature of the indemnity required prompt investigation and preparation for a defense to the possible litigation by the one who shall or might be, through his contract, forced to become the real defendant, for with passing time the discovery of witnesses becomes more difficult, physical conditions change, memory becomes less sure, facts become distorted, and "more dangerous than all, fraud and cupidity have had opportunity to perfect their work."

Undisputed facts may appear where the court should as a matter of law hold that the occurrence was so trivial the insured was not required to report it to the company, even though apparently casual or latent injuries subsequently developed to be serious ones. On the other extreme, there may be accidents of such magnitude, or injuries of such degree, apparent or disclosed at the time, as would authorize a holding as a matter of law that they should have been reported in order to place liability on the insurance company and recover under the policy.

Illustrative of the former class is Chapin v. Ocean Accident & Guaranty Corp., 96 Neb. 213, 147 N. W. 465, 52 L. R. A. (N. S.) 227, where a boy was thrown from a bicycle by the insured's automobile and stated that he had received no injury and there was no apparent injury to him, and also Midland Glass & Paint Co. v. Ocean Accident & Guarantee Corp., 102 Neb. 349, 167 N. W. 211, L. R. A. 1918D, 442, where an employee had suffered a slight abrasion on his finger and continued to perform his full duties for many months without complaint. Illustrative of the latter class of cases is McCarthy v. Rendle, 230 Mass., 35, 119 N. E. 188, L. R. A. 1918E, 111, where an employee's leg was scalded; he walked away unaided and had his injury dressed and went home, returned to work the next day, a week afterwards stopped work, and about two weeks thereafter asserted a claim for damages. It was held that the insured could not deprive the insurance company of its contractual right to an immediate notice, although the insured may have had a reasonable and bona fide doubt as to the existence of an injury or liability, until a claim for damages was definitely made.

In Haas Tobacco Co. v. American Fidelity Co., 226 N. Y. 343, 123 N. E. 755, 13 A. L. R. 132, the general rule was stated to be as we have given it, that the conditions of the policy with reference to notice did not apply to every trivial occurrence; but by a divided court it was held that the insured should have given notice that the automobile, covered by the policy, had struck and knocked a boy down, because the next day, having knowledge of the accident, he made no investigation of it, but elected to rely on the mere statement of his driver that "it didn't amount to anything." The opinion closely followed upon Melcher v. Ocean Accident & Guaranty Corp., 226 N. Y. 51, 123 N. E. 81, 82, in which a workman had been struck by an elevator and upon inquiry stated he had not been hurt but only scared. The court held that the instruction or charge to the jury was as favorable to the insurance company as it was entitled to. That charge was to the effect that if the jury believed from the evidence that the superintendent of the insured had no reason to believe there was an injury, or that what had happened would tend toward bodily injury, he would be justified in not giving notice to the insurance company "because there was neither a claim of injury made nor any such condition existing which would warrant a reasonable man in believing that there was any injury." Commenting upon this Melcher case in the Haas Tobaco Company case, the court declared that the rule should not be extended, meaning evidently that it would go no further in permitting a recovery on an indemnifying policy in the absence of prompt notice.

The true rule, it seems to us, must be declared to be that notice is an essential requirement in order to fix liability on the insurer when there has been such an occurrence or accident as would lead the ordinarily prudent and reasonable man to believe that it might give rise to a claim for damages. Such is the fair and reasonable construction to be given the condition of the policy and the principle upon which all the cases cited were determined.

Applying the rule to the case at bar: Although it would seem the physical facts of the accident were such as would lead one to anticipate a claim had there been an apparent or external indication of injury, the young lady insisted that she was not hurt, and was so emphatic in her declarations that she refused all courtesy and assistance offered, and declined to give her name, thereby tend-

ing to disarm the insured, and to create a bona fide belief that he would not be called upon to respond to a claim for damages. Under those circumstances a majority of the court is of the opinion that it was proper for the trial court not to have decided the case as a matter of law, but that he should have submitted it under an appropriate instruction stating the plaintiff's duty to give notice in accordance with the terms of the policy, and leaving it to the jury to say whether the circumstances of the accident were such as would suggest to one of ordinary and reasonable prudence that a claim for damages might arise from them. If they were, then the jury should find for the defendant, as the court will hold as a matter of law, that notice was not given within a reasonable time.

The judgment is accordingly reversed for a new trial.

Whole court sitting. Chief Justice THOMAS and Judge DIETZMAN concur in the order of reversal, but are of the opinion that a peremptory instruction should have been given to find for the appellant.

### CONCURRING OPINION BY JUDGE DIETZMAN.

Under the majority opinion, it is left to the jury to say whether an ordinarily prudent and reasonable man who had with his automobile knocked a woman ten or fifteen feet to a hard asphalt street, tearing and soiling her clothing, could reasonably believe that such an occurrence was not one which *might* result in a claim against him for damages on account of bodily injury or for other causes, because, forsooth, the lady in the excitement of the occasion declined to give her name and unquestionably on account of stunned nerves declared she was not injured, when as a matter of fact she was severely hurt. I am almost tempted to say res ipsa loquitur. It is impossible for me to understand how any reasonably prudent man who had knocked a woman with his automobile so hard as to throw her fifteen feet to the ground, soiling and tearing her clothing, could reasonably believe that this was not an occurrence out of which a claim for damages *might* arise. The policy does not say "would" arise but "might" arise, and the word "might" means something less than a sure probability. The fact that the lady declined to give her name when asked and stated that she was not injured does not militate against this conclusion; for an ordinarily prudent man ought to

know that when a woman has been knocked fifteen feet to an asphalt pavement, a condition of excitement and stunned nerves is as bound to follow as night is bound to follow day, and that one has no right to rely upon what a man or woman would say under such circumstances. It is true that the courts have held that in cases of apparently trivial accidents, there is no duty upon the insured under a clause of his insurance policy such as is here involved to give notice to the insurer until he acquires knowledge that the injury has taken on an aspect suggestive of a possible claim for damages, but in the light of the reasons upon which the courts uphold the reasonableness of the clause of the policy here involved and enforce it and which are so well expressed in the majority opinion, I am firmly of the view that the doctrine of trivial accident should be closely circumscribed and that the majority opinion in this case is an unwarranted extension of that doctrine. For instance, in Melcher v. Ocean Accident & Guarantee Corp., 226 N. Y. 51, 123 N. E. 81, where a workman, hit by an elevator, said he was not hurt but later made a claim for damages, the doctrine of trivial accident was applied, and yet in the case of Haas Tobacco Co. v. American Fidelity Co., 226 N. Y. 343, 123 N. E. 755, 756, 13 A. L. R. 132, where surely the accident was no more severe than in the Melcher case, the court declined to apply the doctrine. The only distinguishing feature between the two cases is that in the Melcher case the injured party said he was not hurt, while in the Haas case nothing was said by the injured party. But, as I have pointed out, a statement made under such circumstances should by a reasonable man who is held to know the ways of life and the experiences of mankind be considerably discounted, and he has no right to think that such a statement precludes the idea that a claim for damages might arise because of the accident. The truth of the matter is, the New York court, when confronted with the Haas case, realized that it had gone too far in the Melcher case, for it said: "The ruling in the Melcher case is not to be extended. Under the peculiar circumstances there disclosed, and in view of the full investigation made, it might fairly be said that a reasonable man was justified in believing the occurrence so trivial that no report was required." Which no doubt was a polite way the court employed in referring to its former opinion which it regarded as unsound, but which it was for some reason or other, perhaps

because of the recentness of the former decision, unwilling to overrule.

The cases of Deer Trail Consolidated Mining Co. v. Maryland Insurance Co., 36 Wash. 46, 78 P. 135, 67 L. R. A. 275, the Haas case, supra, and Northwestern Telephone Exchange Co. v. Maryland Casualty Co., 86 Minn. 467, 90 N. W. 1110, refused to apply the doctrine of trivial accident under facts no stronger than those in the instant case. The Nebraska case of Chapin v. Ocean Accident & Guarantee Corp., 96 Neb. 213, 147 N. W. 465, 52 L. R. A. (N. S.) 227, is the most extreme case from my point of view where the doctrine has been applied. I do not regard it as sound. The accident or occurrence which a reasonably prudent man in these times ought to think might not result in a claim for damages should be trivial indeed. As well said in McCarthy v. Rendle, 230 Mass. 35, 119 N. E. 188, 189 L. R. A. 1918E, 111: "The occurrence of an accident and injury, however slight, may result in litigation, even in protracted litigation. It is the experience of every defender of causes that it is a matter of first importance to become possessed of all material facts and of the names and residences of all known witnesses at the earliest possible moment, as facts may be forgotten or distorted and witnesses may go beyond reach. It is an important provision in that it is 'for the protection of the insurer against fraudulent claims, and also against those which, although made in good faith, are not valid.'"

I cannot bring myself to the conclusion that a jury could reasonably say that a necessarily prudent man could reasonably think the accident in the instant case was not one which *might* result in a claim for damages. I do not mean to say, of course, that the appellee is not ordinarily a reasonably prudent man, but even the reasonably prudent man is sometimes caught off his guard. However, if he is, and, to paraphrase Justice Holmes, walks too near the line that divides prudent from imprudent conduct, he takes the risk, and if he oversteps the line, he must bear the consequences with fortitude.

Therefore, while I agree in the reversal of this case, I think the appellant was entitled to a peremptory instruction. As the verdict in the first case was the same as would have been had if such an instruction had been given, I think the verdict and judgment in the first case should be reinstated. I am authorized to say that Chief Justice Thomas concurs in these views and this opinion.