LENNON *v.* AMERICAN FARMERS MUTUAL INSURANCE COMPANY

[No. 45, October Term, 1955.]

426

*Decided December 5, 1955.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Wesley E. Thawley*, for appellant.

*William W. Travers*, with whom were *Webb, Bounds & Travers*, for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

On September 5, 1953, Dr. William Earl Lennon, a physician of Federalsburg, with offices also in Easton, was sued for damages in the Circuit Court for Caroline County by Elmer T. Russell for injuries allegedly sustained as a result of the doctor's negligent operation of his automobile on January 31, 1952. Dr. Lennon, who held an automobile liability insurance policy of the American Farmers Mutual Insurance Company, asked that company to defend the suit. The policy required the company (1) to defend any suit against him alleging bodily injury sustained by any person, caused by accident and arising out of the ownership, maintenance or use of his automobile, even if such suit is groundless, false or fraudulent; and (2) to reimburse him for all reasonable expenses, other than loss of earnings, incurred at the

company's request. The company refused to defend the suit on the ground that he did not comply with the provision that written notice of an accident shall be given to the company "as soon as practicable." Dr. Lennon thereupon employed K. Thomas Everngam and Harry R. Hughes, of the Caroline County bar, to act as his attorneys in defending the suit.

The case was tried before a jury in April, 1954. It appeared at the trial that Dr. Lennon, while on the way to his home on the night of January 31, 1952, stopped at a beer tavern near Federalsburg, operated by Stanley H. Klemm, to get a bottle of beer. Russell, whom he had never known before, urged him to match coins. Dr. Lennon agreed to do so and in a short time won about ten dollars from him. The doctor then decided to leave. Russell, hoping his luck would turn, tried to prevent him from leaving. The doctor, however, went out to get in his car, and Russell followed. When the doctor backed his car across the highway, Russell, using abusive language, walked alongside the car with the door open. The doctor warned him that if he didn't get away he would push him out of the way. He testified, however, that he did not cause Russell any injury.

The jury, finding that there had not been any injury, rendered a verdict in favor of Dr. Lennon, who thereupon called upon the insurance company to reimburse him for the attorneys' fees and other expenses incurred in the defense of the suit. The company refused to do so, and he accordingly entered suit against it to recover the expenses incurred. He claimed $1,000 for the attorneys' fees, $200 for physical examinations of Russell and expert testimony of the physicians, $23 for X-ray and laboratory expenses, and $23 for shorthand reporting.

Defendant pleaded that plaintiff had failed to give it notice of the accident as required by the insurance policy This requirement reads as follows:

> "When an accident occurs written notice shall be given by or on behalf of the insured to the

company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses."

At the trial of this case plaintiff again testified that no accident occurred and he did not injure Russell when he backed his car on the road. He said he was positive of this because Russell was walking slowly and was still arguing with him when he was ready to drive away toward Federalsburg. "I could have hurt the boy," he said, "if I had gone across the road fast, because I could have knocked him down and drug him, but I didn't do that." He also said that if he had known of any accident, he would have reported it to the Commissioner of Motor Vehicles and the insurance company. He further said that he did not receive any notice of any injury or any claim during the period of one year and seven months prior to the institution of the suit.

The insurance company set up the defense that when Dr. Lennon stopped in the tavern again about three weeks after the incident, Klemm, the proprietor of the tavern, said to him: "Did you know that the Russell boy is gunning for you? * * * He said you hurt his foot."

At the conclusion of the case the Court submitted the following issues to the jury:

(1) Did Russell sustain personal injuries as a result of the operation of an automobile by Dr. Lennon?

(2) Could Dr. Lennon, by the exercise of ordinary care and diligence, have determined within one month after the incident that a collision had occurred between his car and Russell which might give rise to a law suit against Dr. Lennon?

(3) What is the reasonable value of the legal services rendered by Dr. Lennon's attorneys in the case filed by Russell?

To the first two questions the jury answered "No." To the third question they answered "$1,000.00."

Thus the jury found, as did the jury in the damage suit, that Russell did not sustain any injuries caused by negligence of Dr. Lennon. It also found that the remark in the tavern was not sufficient to lead Dr. Lennon to believe that Russell would sue him for damages.

The judge, on defendant's motion for judgment n.o.v., set aside the verdict and judgment *nisi* and entered judgment in favor of defendant. From that judgment plaintiff appealed to this Court.

The judge based his action upon Klemm's remark to Dr. Lennon that Russell was "gunning" for him. He stated the reasons for his decision as follows:

"It is the opinion of this Court that under these circumstances a reasonably prudent person exercising due diligence should have known that Russell was threatening him because of a claim that he had hurt his foot as a result of backing the car and that in the exercise of due diligence he should have investigated the threat and reported his findings to the insurance company and not regarded the information as a joke. The Court further finds that reasonable minds should not differ in respect to the reaction of a reasonable person under these circumstances and therefore rules as a matter of law that Dr. Lennon should have known approximately three weeks after the incident that Russell was claiming he had hurt his foot as a result of Dr. Lennon backing his car in an effort to get away from him and even though the claim was groundless and false, as the jury has found, it might well result in a law suit which the insurance company was bound to defend under the terms of its policy and the incident should have been reported as soon as practicable thereafter. Such notice was not given and the fail-

ure to perform this condition relieves the company of liability irrespective of whether the insurer was prejudiced by such failure."

The purpose of the provision in an insurance policy that the insured shall give the insurer notice of an accident as soon as practicable is to give the insurer an opportunity to make an adequate investigation of the circumstances, and either to prepare for a defense or determine that it is prudent to settle any claim arising therefrom. The provision "as soon as practicable" in a liability insurance policy means as soon as may reasonably be possible under the facts and circumstances of each particular case. *Maryland Casualty Co. v. Ohle*, 120 Md. 371, 378, 87 A. 763. It frequently happens that when a notice is unduly delayed, an adequate investigation cannot be made on account of the opportunity for fraud or collusion, or the loss of opportunity for inspecting or photographing the surroundings, or the death or removal of witnesses. The requirement that the insured shall give prompt notice of an accident is an important provision for the insurer's protection, not only against fraudulent claims, but also against claims which are invalid although made in good faith. Thus, as a general rule, compliance by the insured with the requirement of notice is a condition precedent to the right of recovery. *Lewis v. Commercial Casualty Insurance Co. of Newark*, 142 Md. 472, 480, 121 A. 259, 28 A. L. R. 1287; *McCarthy v. Rendle*, 230 Mass. 35, 119 N. E. 188.

We adopt the rule, which has been followed by the courts in this country almost universally, that in order to hold liable the insurer in a liability policy, the insured must give to the insurer a notice of the accident in accordance with the policy's provision where the accident is sufficiently serious to lead a person of ordinary intelligence and prudence to believe that it might give rise to a claim for damages. *Haas Tobacco Co. v. American Fidelity Co.*, 226 N. Y. 343, 123 N. E. 755, 13 A. L. R. 132; *National Paper Box Co. v. Aetna Life Insurance Co.*, 170 Mo. App. 361, 156 S. W. 740, 743.

Of course, where there is apparently no injury from an accident and no reasonable ground for believing that an injury might ensue therefrom, the insured has no obligation to notify the insurer. Obviously the insured need not consider every trivial mishap an accident which he must report to the insurer, even though serious injury eventually ensues therefrom. *Melcher v. Ocean Accident & Guarantee Corporation,* 226 N. Y. 51, 123 N. E. 81; *Baker v. Metropolitan Casualty Insurance Co. of New York,* 118 Conn. 147, 171 A. 7; *Public Coal Co. v. Continental Casualty Co.,* 138 Pa. Super. 480, 10 A. 2d 860; *Southern Surety Co. v. Heyburn,* 234 Ky. 739, 29 S. W. 2d 6; *Burbank v. National Casualty Co.,* 43 Cal. App. 2d 773, 111 P. 2d 740, 743; *Shafer v. United States Casualty Co.,* 90 Wash. 687, 156 P. 861; *Fireman's Fund Indemnity Co. v. Kennedy,* 9 Cir., 97 F. 2d 882, 889; *Maryland Casualty Co. v. Sammons,* 5 Cir., 99 F. 2d 323, 325, *certiorari* denied 306 U. S. 633, 59 S. Ct. 463, 83 L. Ed. 1035.

Where the facts are undisputed and only one conclusion is reasonably possible, the question whether or not the insured under a liability policy complied with the requirement of notice is a question of law for the court; but where the facts are disputed or more than one conclusion is reasonably possible, the question is one for the jury. *Loomis v. Norman Printers' Supply Co.,* 81 Conn. 343, 71 A. 358; *Baker v. Metropolitan Casualty Insurance Co. of New York,* 118 Conn. 147, 171 A. 7, 9.

In *Chapin v. Ocean Accident & Guarantee Corporation,* 96 Neb. 213, 147 N. W. 465, 467, the insured's automobile, while being driven by his employee, struck a bicyclist and threw him to the pavement. The insured promptly interviewed the bicyclist, who said that he was not injured. The insured, relying upon that statement, did not send any report of the accident to the insurer at that time. Nearly a year later, however, the insured was told that the bicyclist was suffering from some kind of paralysis and that it was the result of his fall from

the bicycle. The Supreme Court of Nebraska said in that case that it could not be ruled as a matter of law that the insured's notice to the insurer, although not given until a year after the accident, failed to comply with the requirement of the policy. The Court said: "It is evident that it cannot have been the intention of the parties that such an accident as a mishap, casualty, or misadventure occurring without bodily injury to any one should be reported, since with such an occurrence defendant has no concern. * * * If no apparent injury occurred from the mishap, and there was no reasonable ground for believing at the time that bodily injury would result from the accident, there was no duty upon the assured to notify the insurer."

In *Ohio Insurance Co. v. Rosaia*, 9 Cir., 74 F. 2d 522, the evidence disclosed that the insured's automobile, while being driven by his daughter, collided with the rear end of another car, knocking it ahead about ten feet so that its front wheels went into a ditch. A woman in the front car said that she had hurt her head, but she declined to go to a doctor. When she walked across the road, the insured's daughter did not see any cuts on her head or anything else to indicate that she had been injured. No claim was made against the insurer until a year and a half after the accident. The Circuit Court of Appeals held that, since it did not appear at the time of the accident that any of the occupants of the front car were injured, the question whether the insured, who failed to give the insurer any notice of the collision until the claim for injuries was asserted, complied with the policy provision requiring immediate written notice after an accident was a question for the jury.

In the case before us the insured testified that he was certain that there was no accident or any injury to the man who brought suit for damages against him. He also testified that he never received any claim from the man before he instituted the suit. The insurer relied upon the remark of the tavern keeper that the

Russell boy was "gunning" for him. We do not think this remark was sufficient as a matter of law to give him notice that Russell would file a suit against him to recover for alleged physical injuries. Klemm testified that Russell's brother Toby asked him: "Did you hear that Dr. Lennon hurt my brother?" Klemm replied: "No. What are you doing, kidding me?" Klemm declared on the stand that he did not consider the remark seriously. He explained that he mentioned it to Dr. Lennon just as a joke. "If the man would have been hurt," Klemm also stated, "I think he would have come back in the building and told somebody to go to the doctor or something." Likewise, Dr. Lennon testified that he took the remark as a joke and paid no attention to it. He looked upon it lightly (1) because he was positive that there had not been any accident, and (2) because he had not heard anything more about the dispute over the ten dollars.

For these reasons we hold that the jury were justified in finding that the facts and circumstances would not lead a reasonably prudent person to believe that a claim for damages might be brought as a result of the occurrence. *Farrell v. Nebraska Indemnity Co.,* 183 Minn. 65, 235 N. W. 612; *George v. Aetna Cas. & Surety Co.,* 121 Neb. 647, 238 N. W. 36, 38; *McKenna v. International Indemnity Co.,* 125 Wash. 28, 215 P. 66. The jury found that the insured is entitled to recover the attorneys' fees and other expenses incurred in defending the suit for damages. Therefore, we must reverse the judgment n. o. v. and enter judgment in favor of plaintiff in accordance with the jury's verdict.

> *Judgment reversed and judgment entered in favor of plaintiff against defendant for the sum of $1,246.00, with interest from October 5, 1954, and costs.*