603 P.2d 1105

**Paul A. PHILLIPS and Estelle S. Phillips, husband and wife, Plaintiffs-Appellants,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant-Appellee.**

**No. 3735.**

Court of Appeals of New Mexico.

Nov. 8, 1979.

Paul A. Phillips, pro se.

LeRoi Farlow, Gordon J. McCulloch, Farlow & Bradley, Albuquerque, for defendant-appellee.

## OPINION

HERNANDEZ, Judge.

Plaintiffs appeal from the granting of summary judgment in favor of defendant.

We reverse and remand for further proceedings.

Plaintiffs had been insured by defendant for automobile liability and collision from 1957 on. Defendant had renewed plaintiffs' coverage on a yearly basis since that time. On July 29, 1976 defendant mailed a letter to plaintiffs, the pertinent part of which reads as follows:

*Your auto insurance has been continued and we appreciate the opportunity to serve you. The protection you have for the coming year and the cost is shown on the enclosed premium statement.*

.    .    .    .    .

If you wish to use a payment plan, your payment notice shows the amount of your first payment and when it is due. Or, you can pay the total amount. Either way, please be sure to send your payment on time. Then you won't risk being without insurance. [Emphasis added.]

Attached to this letter were two documents. One was the payment statement, which reads in part:

USE THE PAY PLAN YOU PREFER

| | | |
|---|---|---|
| 3–PAY PLAN (SEE BACK) . . . . . . . . . . . . .40 PERCENT DUE | $217.25* |
| MULTI–PAYMENT PLAN  . . . . . . . . . . . . . . .AMOUNT DUE | 54.85* |
| PAY–IN–FULL . . . . . . . . . . . . . . . . . . . . . . . . .AMOUNT DUE | 536.00 |

* A PARTIAL PAYMENT FEE OF $12.50 IS INCLUDED.

The other document recites in part as follows:

DECLARATIONS
  ALLSTATE INSURANCE COMPANY
      ISSUED JUL 29, 1976

1. Policy number 0 20 856215 08/31

2. Name of PAUL A & E PHILLIPS
   Insured

3. Address  9800 CHAPALA N E
            ALBUQUERQUE NM  87111

SUPPLEMENT PAGE 1
     Policy Period
BEGINS ON AUG 31, 1976

WITH NO FIXED DATE OF EXP.

12:01 A.M. Standard Time

(See reverse side for additional Policy Provisions.)

4. The insurance afforded, including that with respect to each described vehicle, is only for each such coverage, including the limit(s) applicable thereto, as is set forth below, subject, however, to all the applicable provisions of the policy. (if the word "amended", followed by a date, appears above, the insurance applies only prospectively from such date.) [Emphasis added.]

----

On August 2, 1976 defendant mailed another letter which reads in pertinent part as follows:

In reply please refer to
August 2, 1976
Policy Number: 20 856 215
Type of Policy: Auto
Expiration Date: Aug. 31, 1976

Refund: If any, will follow
  Paul A. & E. Phillips
9800 Chapala NE
Albuquerque, NM 87111
  Dear Mr. & Mrs. Phillips:
  We're sorry we are unable to renew your insurance protection under the policy listed above. Your insurance will expire at

12:01 A.M. (at your address) on the expiration date shown above. Of course, your protection will continue until then. [Emphasis added.]

Plaintiffs in their first cause of action alleged that:

3. On or about July 29, 1976, the Defendant agreed to and contracted to renew Plaintiffs' auto insurance coverage from August 31, 1976 to August 31, 1977. This was done by letter and enclosure copies of which are annexed hereto as Exhibit A. The premium for the renewal of such insurance was approximately $536.00. Thereafter, on or about August 2, 1976, Defendant ALLSTATE, in a letter to the Plaintiffs, copy of which is annexed hereto as Exhibit B, purported to refuse to renew Plaintiffs' automobile insurance coverage.

4. Defendant's purporting to refuse to renew Plaintiffs' insurance constituted a breach of the contract created by its letter of July 29, 1976, and its actions over a period of nineteen years of insurance coverage.

Plaintiffs in their second cause of action alleged that:

6. By reason of the Defendant's arbitrary and capricious and unreasonable refusal to perform its contract and to continue its course of dealing with the Plaintiffs, Plaintiffs' reputation as an insurance risk was severely damaged and in the course of years to come will constantly be required to pay higher premiums than if the Defendant had performed its contract.

Defendant denied all of these allegations.

An examination of the plaintiffs' complaint and the exhibits and the denials in defendant's answer immediately raises several very material issues of fact.

█ Plaintiff alleged in his complaint that his prior course of dealings with defendant spanned a period of eighteen years. The facts surrounding prior renewals present material questions concerning the nature of those dealings, and plaintiff should have had the opportunity to present

evidence on that matter unless we can say that, as a matter of law, they would have no bearing on the question of renewal. In view of defendant's unambiguous and declaratory statements in the documents mailed July 29th, we are of the opinion that, depending upon what the evidence of prior conduct shows, defendant may well have extended an irrevocable offer to plaintiff (*See* Corbin on Contracts, §§ 43–44), or plaintiff may have accepted the offer by his silence (ibid., § 75), or this letter may have constituted an automatic renewal or continuation of the existing contract of insurance between the parties. In this regard, we note that the policies referred to in the letter of July 29th and the letter of August 2nd are the same—policy number 20 856 215. *See, also, Small Agency, Inc. v. Dugay*, 4 Conn.Cir. 710, 239 A.2d 553 (1967).

*Martin v. Argonaut Insurance Company*, 91 Idaho 885, 434 P.2d 103 (1967) states:

[A] course of conduct by the insurer which automatically renews policies over a period of years may require an actual notice to the insured of intent not to renew.

17 Couch on Insurance 2d at § 61:11 states:

The refusal to renew a policy can of course have no effect upon rights which have already vested.

█ Furthermore, a claim of defamation, like other tort claims, raises questions of fact which generally preclude summary judgment adjudication. This case is no exception. *See Salazar v. Bjork*, 85 N.M. 94, 509 P.2d 569 (Ct.App.1973), *cert. denied*, 85 N.M. 86, 509 P.2d 561 (1973); *Tagawa v. Maui Publishing Company*, 49 Haw. 675, 427 P.2d 79 (1967); *Barlow v. International Harvester Company*, 95 Idaho 881, 522 P.2d 1102 (1974); *Cahill v. Hawaiian Paradise Park Corporation*, 56 Haw. 522, 543 P.2d 1356 (1975); *Schulze v. Coykendall*, 218 Kan. 653, 545 P.2d 392 (1976).

It is firmly established in this jurisdiction that summary judgment is properly granted *only when there is no genuine issue as to any material fact* and the moving party is entitled to judgment as a

matter of law. [Emphasis added.] *Archie v. Smith*, 78 N.M. 548, 434 P.2d 73 (Ct.App.1967), *cert. denied*, 78 N.M. 627, 435 P.2d 1009 (1967).

The defendant did not submit any affidavits or other documents in support of its motion for summary judgment. Defendant's counsel filed a memorandum brief. The arguments of counsel, no matter how erudite, are not evidence.

> [T]he burden rests upon the party moving for summary judgment to show that there is no genuine issue of material fact to submit to the court before summary judgment may properly be granted. *Fidelity Nat. Bank v. Tommy L. Goff*, 92 N.M. 106, 583 P.2d 470 (1978).

It is our opinion that the defendant failed to carry this burden.

IT IS SO ORDERED.

HENDLEY and WALTERS, JJ., concur.