628 P.2d 1140

**Donna EMERY and Carl Emery, Individually and on behalf of Steven Emery, a Minor, Plaintiffs-Appellants,**

v.

**UNIVERSITY OF NEW MEXICO MEDICAL CENTER, Defendant-Appellee.**

**No. 4903.**

Court of Appeals of New Mexico.

May 12, 1981.

Harold Worland, Duhigg & Cronin, Albuquerque, for plaintiffs-appellants.

W. Robert Lasater, Jo Saxton Brayer, Rodey, Dickason, Sloan, Akin & Robb, P. A., Albuquerque, for defendant-appellee.

## OPINION

WOOD, Judge.

This appeal involves the notice provisions of § 41–4–16, N.M.S.A.1978. We discuss: (1) procedural matters; (2) actual notice; and (3) when the notice provision began to run.

The pertinent provisions of § 41–4–16, supra, are:

A. Every person who claims damages from the state or any local public body under the Tort Claims Act [41–4–1 to 41–4–25 NMSA 1978] shall cause to be presented to the risk management divi-

sion for claims against the state, the mayor of the municipality for claims against the municipality, the superintendent of the school district for claims against the school district, the county clerk of a county for claims against the county, or to the administrative head of any other local public body for claims against such local public body, within ninety days after an occurrence giving rise to a claim for which immunity has been waived under the Tort Claims Act, a written notice stating the time, place and circumstances of the loss or injury.

B. No suit or action for which immunity has been waived under the Tort Claims Act shall be maintained and no court shall have jurisdiction to consider any suit or action against the state or any local public body unless notice has been given as required by this section, or unless the governmental entity had actual notice of the occurrence. The time for giving notice does not include the time, not exceeding ninety days, during which the injured person is incapacitated from giving the notice by reason of injury.

The complaint alleges that Donna gave birth to Steven while Donna was a patient at defendant hospital; that defendant, through its agents and employees, was negligent in the care of Steven with the result that Steven suffered brain damage. Defendant asserted, as an affirmative defense, that plaintiffs failed to comply with § 41–4–16, supra.

*Procedural Matters*

(a) We make no distinction between the plaintiff-parents and the plaintiff-infant without deciding whether such a distinction might be appropriate in another case.

(b) The complaint alleges that defendant is a "division" of the State of New Mexico not qualified under the Medical Malpractice Act. The answer admits that defendant is not a "qualified" health care provider, see § 41–5–5, N.M.S.A.1978, but denies that defendant is a division of the state. The written notices given by plaintiffs were given both to the state and to the county. Those notices refer to a claim against Ber-

nalillo County Medical Center. There is no contention that a distinction should be made between defendant and the Bernalillo County Medical Center, and such a distinction is not considered in deciding the appeal.

(c) Plaintiffs moved for a hearing on the defense of noncompliance with § 41–4–16, supra, asserting that such a hearing "would be dispositive [sic] of Plaintiffs' claims." At the hearing, the court and counsel treated plaintiffs' notices as a "motion to dismiss the affirmative defense raised concerning the lack of notice . . . ." The motion would seem to be a motion under R.Civ.Proc. 12(f), to strike the defense as "insufficient", rather than a motion under R.Civ.Proc. 12(b)(6), to dismiss for failure to state a claim upon which relief could be granted. However, it is unnecessary to consider the proper characterization of plaintiffs' motion.

A motion to dismiss may be granted only when the claimant cannot be entitled to relief under any state of facts provable under the claim. *Candelaria v. Robinson*, 93 N.M. 786, 606 P.2d 196 (Ct.App. 1980). A motion to strike a defense as "insufficient" raises the question of the legal sufficiency of the defense. See *Harrison v. Lucero*, 86 N.M. 581, 525 P.2d 941 (Ct.App.1974). The notice defense is accorded by § 41–4–16, supra; it is a defense under which a defendant might be entitled to relief against plaintiffs' claim and, thus, a defense not to be stricken as insufficient as a matter of law. Our point is that regardless of how plaintiffs' motion might be characterized, it could not be decided as a matter of law in this case.

(d) At the hearing on plaintiffs' motion, counsel for both parties made an occasional reference to a factual matter, but nothing was presented to the court which could be considered as evidence of the facts. Most of the argument went to the legal meaning of § 41–4–16, supra. After listening to this argument, the trial court denied the right of plaintiffs to proceed "based upon the 90 day notice". This was a ruling that the notice requirement of § 41–4–16,

supra, was not met as a matter of fact. The arguments of counsel are not evidence. *Phillips v. Allstate Ins. Co.*, 93 N.M. 648, 603 P.2d 1105 (Ct.App.1979); see *State v. Edwards*, 54 N.M. 189, 217 P.2d 854 (1950); U.J.I. Civ. 1.6(6). There being no evidence on which to decide the notice defense as a matter of fact, this oral ruling of the trial court was erroneous.

(e) Early in his argument, plaintiffs' counsel referred to an affidavit. After the trial court's oral ruling denying plaintiffs' counsel the right to proceed, counsel asked for permission to file the affidavit. Permission was granted; the trial court told plaintiffs' counsel to "[f]ile your affidavit". After the affidavit was filed, defendant's counsel was to "present your order, which will be signed—". Compare *Johnsen v. Fryar*, (Ct.App.) No. 4477, decided October 2, 1980 (St.B.Bull. Vol. 19, No. 45 at 1024, cert. granted November 21, 1980).

(f) The affidavit, together with attachments purporting to be copies of written notices to the state and county and copies of medical records, was filed August 29, 1980. Over a month later an order was entered dismissing plaintiffs' complaint with prejudice.

Plaintiffs rely on the affidavit and attachments to show that dismissal was erroneous. Defendant contends these items cannot properly be considered. If this contention is correct, then the trial court's order must be reversed because there would be no factual basis for the order.

(g) Defendant claims that the affidavit and attachments were not before the trial court at the time of the hearing. This argument overlooks the fact that permission was granted to file the affidavit. Defendant asserts the contents of the affidavit and attachments went beyond the subject matter of the trial court's permission. Defendant had more than 30 days to raise such an objection, but did not do so. Defendant also complains that the contents of the attachments are not in the proper form to be considered. No such objection was raised to the trial court. These contentions not having been raised in the trial court, they will

not be considered. See *Cordova v. City of Albuquerque*, 86 N.M. 697, 526 P.2d 1290 (Ct.App.1974).

The affidavit and attachments were before the trial court without objection on defendant's part. These items converted the "motion to dismiss" hearing into one for summary judgment, see R.Civ.Proc. 12(b), and the order dismissing with prejudice was a summary judgment in favor of defendant.

*Actual Notice*

■ Section 41–4–16(A), supra, is a provision for written notice to the state or local public body against whom the claim is made. Section 41–4–16(B), supra, states a jurisdictional bar to suit unless the required notice has been given "or unless the governmental entity had actual notice of the occurrence." Actual notice of the occurrence in § 41–4–16(B), supra, which excuses written notice, is similar to actual notice of the occurrence excusing written notice in § 52–1–29(B), N.M.S.A.1978, of our workmen's compensation statute; these provisions should be interpreted similarly. See *Martinez v. City of Clovis*, 95 N.M. 654, 625 P.2d 583 (Ct.App.1980). If defendant had actual knowledge of the incident on which plaintiffs' claim is based, written notice was excused. *Beckwith v. Cactus Drilling Corporation*, 84 N.M. 565, 505 P.2d 1241 (Ct. App.1972).

One of the attachments to plaintiffs' affidavit is a letter to the plaintiff-parents. The letter has a letterhead "BERNALILLO COUNTY MENTAL HEALTH/MENTAL RETARDATION CENTER—The University of New Mexico Mental Health Programs". It is signed by a "Nurse Specialist". The letter refers to Steven's problem with "movements, mainly because of the brain damage he sustained shortly after he was born." The letter states that Steven's mental abilities are "delayed"; that he was acting like a younger child; "[t]his also is because of the brain damage he sustained after birth." Another attachment is a "DISCHARGE SUMMARY" showing Steven was discharged from the hospital on March 26, 1979. This summary states:

Approximately 24 hours of age the baby experienced some sort of insult with a questionable seizure activity noted. After the next 5 days the baby was in a state of semi-coma with very little spontaneous movement. EMI scan on 3/7 showed equivocal increase of coefficients in the left frontal lobe representing either a small focal acute hemorrhage or infarct.

The foregoing is the showing made by plaintiffs who were *opposing* dismissal of their claim on the basis of lack of notice. Defendant, who was seeking a judgment sustaining its defense of noncompliance with § 41–4–16, supra, had the burden of showing an absence of a fact issue on the question of non-compliance. *Goodman v. Brock*, 83 N.M. 789, 498 P.2d 676 (1972). Defendant did not make such a showing; it presented nothing to show an absence of a factual issue except its counsel's argument: "There's nothing in the medical records, as far as I can find, that would really give the state or its agents any notice that there was anything that went wrong here . . . ." We have previously pointed out that arguments of counsel are not evidence.

■ The only showing in the record is that there was a question of fact as to whether defendant had "actual notice" of the occurrence on which plaintiffs' claim is based. There being a question of fact as to actual notice, summary judgment in favor of defendant was erroneous.

*When the Notice Provision Begins to Run*

Steven was a premature child. Plaintiffs' affidavit states that early on the morning of March 2, 1979, while Donna was gowning for a visit with Steven,

an alarm went off, hospital personnel were working on Steven, she [Donna] saw that the heart rate indicator showed that Steven's heart had stopped. She was told to go into another room, and was subsequently advised by one of the hospital personnel that a medical student had inserted a tube that was supposed to go into Steven's throat, into one lung, and that this had caused the problem.

Defendant contends the incident of March 2, 1979 is the "occurrence" on which plaintiffs' claim is based, and that no written notice was given within 90 days of this occurrence.

Plaintiffs respond that although the discharge summary reports "some sort of insult" to Steven when he was approximately 24 hours old, the hospital records have no mention of brain damage until the physician with whom the parents met on November 7, 1979 raised the question in the records after the parents expressed their concern with Steven's development. "Brain damage?" is again noted in the hospital record after the parents' visit of November 21, 1979. Although brain damage is raised as a question in the hospital records in November, 1979, the affidavit states that plaintiffs were never advised of this brain damage as a possibility. "At the time of the January 24, 1980 visit, we were first advised that Steven did definitely have brain damage and that it was probably related to the incident in the hospital following his birth." Thereafter, the parents received the letter of February 6, 1980 from which we quoted in discussing actual knowledge. Plaintiffs' written notices, to the state and county, are dated February 29, 1980. On the basis of the items in this paragraph, plaintiffs contend their written notices were timely.

Section 41–4–16(A), supra, requires a written notice "within ninety days after an occurrence giving rise to a claim for which immunity has been waived under the Tort Claims Act . . . ." Plaintiffs' claim is one for which immunity has been waived, § 41–4–9, N.M.S.A.1978. Defendant's contention, that the 90–day notice provision runs from the "occurrence", gives no effect to the statutory language—"occurrence giving rise to a claim". More than an occurrence is involved; compare the difference in the occurrence language of § 41–4–16(A) and (B), supra.

In *Peralta v. Martinez*, 90 N.M. 391, 564 P.2d 194 (Ct.App.1977), we considered a statute of limitations that began to run

from the "injury" and held that the limitation period began to run "from the time the injury manifests itself in a physically objective manner *and* is ascertainable." (Emphasis in original.) In so holding, we pointed out that "there is no cause of action for malpractice until there has been a resulting injury."

If there was an occurrence, as plaintiffs contend, on March 2, 1979, that occurrence did not give rise to a claim until there was an injury. If *Peralta v. Martinez* may be applied, the time period for notice did not begin to run until the injury manifested itself in a physically objective manner *and* was ascertainable.

Defendant asserts that *Peralta,* supra, may not be applied because it involved a statute of limitations rather than a notice, required as a contention precedent to suit. Defendant states: "Although cases interpreting a medical malpractice statute of limitation may be of value in interpreting the statute of limitations provision in the Tort Claims Act, they are of no value in interpreting the notice of claims provision."

The notice provision considered in *Yotvat v. Roth,* 95 Wis.2d 357, 290 N.W.2d 524 (Ct.App.1980), provided that notice was to be given within 90 days " 'of the event causing the injury' ". *Yotvat* held this provision was a "notice of injury statute . . . . If the [date of] discovery rule is to apply to a notice of injury statute, this is as much a policy decision to be implemented by legislation as is application of the discovery rule to statutes of limitation."

New Mexico, like Wisconsin, has recognized the similarity between notice statutes and statutes of limitation. *Espanola Housing Authority v. Atencio,* 90 N.M. 787, 568 P.2d 1233 (1977). However, unlike Wisconsin's decision in *Yotvat v. Roth* to leave the matter to the Legislature, New Mexico, in *Peralta v. Martinez,* supra, applied a "manifestation and ascertainable" rule in interpreting a statute of limitations.

An approach similar to that of *Peralta v. Martinez* was taken by the United States Supreme Court. *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). *Kubrick* considered a statute requiring that a claim be presented in writing " 'within two years after such claim accrues.' " *Kubrick* held that the claim accrued when the plaintiff knew both the existence and cause of his injury, and not when plaintiff knew that the acts inflicting the injury might constitute medical malpractice. See also *Paul v. State,* 88 Misc.2d 972, 389 N.Y.S.2d 277 (1976).

A defendant in a suit under our Tort Claims Act has two "time" defenses, a notice requirement as well as the statute of limitations, § 41–4–15, N.M.S.A.1978. Section 41–4–15(A) has language similar to, and § 41–4–15(B) has language identical to, the language of § 41–4–16(A), supra—"occurrence giving rise to a claim".

In light of the similarity of language between §§ 41–4–15 and 41–4–16, we do not agree that *Peralta v. Martinez,* supra, should not be considered; rather, we view the *Peralta* decision as applicable precedent. Following *Peralta,* there was no occurrence giving rise to a claim until Steven's injury manifested itself in a physically objective manner *and* was ascertainable. The affidavit and attachments to the affidavit show this to be a question of fact. Defendant presented nothing showing an absence of a factual issue and, thus, did not meet its burden under *Goodman v. Brock,* supra. It was not entitled to judgment in its favor on this issue.

The order dismissing plaintiffs' complaint is reversed. The cause is remanded for proceedings consistent with this opinion. Plaintiffs are to recover their appellate costs.

IT IS SO ORDERED.

WALTERS, J., concurs.

SUTIN, J., specially concurring in result.

SUTIN, Judge (specially concurring in result).

I specially concur in the result.

I specially concur solely to attempt to protect plaintiffs' rights although these

rights may have been lost in accordance with our Rules of Civil Procedure and judicial announcements.

Judge Wood's opinion has disregarded the issues raised in the trial court, cast aside defendant's excellent and provocative brief and created a non-existent summary judgment. The purpose of the opinion was to discover some procedural method that would preserve plaintiffs' rights in order to effect "justice" as the public understands it—the right to be heard in court. Parties should not suffer the loss of this right if some reasonable method can be devised to overcome serious errors committed in the trial court. I choose to take the route that defendant's second defense be stricken from the answer.

### A. The trial court did not enter a summary judgment.

On June 26, 1980, plaintiffs erroneously sued defendant under the Medical Malpractice Act for injuries suffered by a minor child in defendant's hospital on February 29, 1978, 16 months prior thereto. Plaintiffs' complaint did not state a claim for relief because it did not show compliance with § 41–4–16, N.M.S.A.1978. But this issue was not raised in the district court. If it had been, perhaps plaintiffs would have filed an amended complaint to show compliance.

On July 18, 1980, defendant filed an answer, the second defense being:

Plaintiffs have failed to comply with the provision of Section 41–4–1, et seq. (N.M.S.A. Comp., 1978) and particularly Section 41–4–16.

On July 28, 1980, plaintiffs filed a Motion for Hearing on Affirmative Defense as follows:

Comes now the Plaintiffs and show to the Court that Defendant's Second Affirmative Defense, Failure to Comply with the provisions of Section 41–4–1, et seq. NMSA 1978 should be set down for hearing as it would be despositive [sic] of Plaintiffs' claim.

This motion was not accompanied by any affidavit nor any indication that testimony or depositions would be presented in its support.

On the same day, plaintiffs gave notice to defendant that on August 25, 1980, at 9:15 A.M., the motion would be heard. Plaintiffs estimated that the total time required for all parties and witnesses would be *15 minutes*. Defendant expected a "legal argument" hearing. At the hearing, plaintiffs made a two-pronged factual argument: (1) the 90 day notice, as provided in § 41–4–16, was waived due to the minority of the child; (2) the parents did not know of the injury and gave notice within 90 days after the knowledge was obtained. Most of plaintiffs' argument was spent on the unconstitutionality of § 41–4–16. Authority cited was *Turner v. Staggs*, 89 Nev. 230, 510 P.2d 879 (Nev.1973), 59 A.L.R.3d 81 (1974). The annotation is devoted to "*Modern Status of the Law as to Validity of Statutes and Ordinances Requiring Notice of Tort Claim Against Local Government Entity.*"

During the course of plaintiffs' argument, the statement was made that, unfortunately, although plaintiffs had almost 30 days to prepare one, plaintiffs did not yet have an affidavit prepared to present at the hearing. Plaintiffs' attorney had been in trial all week and did not "get a chance to get this affidavit prepared and filed." The trial court orally denied the right of plaintiffs "to proceed, based upon the 90 day notice" and requested an Order to that effect. Plaintiffs then requested that the court allow the filing of an affidavit. The request was allowed. The court stated that plaintiffs would first file the affidavit, then the Order would be signed. This allowance was an accommodation to plaintiffs.

On August 29, 1980, four days after the hearing, plaintiffs filed an affidavit with letters and hospital records attached as exhibits but not made upon personal knowledge. It was subscribed and sworn to on August 27, 1980, two days after the hearing. The record does not show mailing or delivery to defendant nor to the court. No request was made of the court to consider this affidavit and apparently the court did

not. On September 30, 1980, a month later, a final Order was entered which dismissed plaintiffs' complaint with prejudice.

By a series of convolutions unknown to a court of review, by twisting, turning and meandering, Judge Wood's opinion concluded:

> ... These items converted the "motion to dismiss" hearing into one for summary judgment, see R.Civ.Proc. 12(b), *and the order dismissing with prejudice was a summary judgment in favor of defendant.* [Emphasis added.]

In this fashion, defendant obtained summary judgment. It was accomplished by way of defendant filing an affirmative defense in its answer. This mystery I cannot solve. It requires the wisdom of Solomon and the dexterity of Houdini. The trial court dismissed plaintiffs' claim with prejudice for failure to give defendant notice as required by § 41–4–16. To convert it into a summary judgment is not a reasonable method of preserving plaintiffs' rights.

B. *Defendant's affirmative defense should be stricken from the answer.*

Section 41–4–16 provides that written notice shall be given "within ninety days after an occurrence giving rise to a claim." Otherwise, plaintiffs' claim is lost "unless the ... [hospital] had actual notice of the occurrence." If the hospital "had actual notice of the occurrence," an action may be "commenced within two years after the date of occurrence resulting in loss, injury or death, except that a minor under the full age of seven years shall have until his ninth birthday in which to file." Section 41–4–15(A).

Defendant takes the position that the affidavit and exhibits filed late by plaintiffs should not be considered by this Court. To do so compels an affirmance of the judgment below. If the defense were based upon substantial evidence, I would agree. If, however, the defense were filed with knowledge that the hospital "has actual notice of the occurrence," then, it was not filed in good faith. Plaintiffs and defendant were in a sense *in pari delicto,* equally at fault. In the trial court, plaintiffs did not argue that defendant "had actual knowledge of the occurrence" as shown by the hospital records. This failure falls within the perimeter of inadvertence or lack of preparation. Defendant, on the other hand, knew that it "had actual knowledge of the occurrence" and remained silent. After the fact, all parties know that if the truth were disclosed to the trial court, the affirmative defense would have been stricken from the answer.

" 'Even where the contracting parties are in pari delicto, the courts may interfere from motives of public policy.' " *Dahms v. Swinburne,* 31 Ohio App. 512, 167 N.E. 486, 487 (1929). The same rule should be applied here. "The peculiar function of equity is to afford relief for wrong where there is no remedy or no adequate remedy at law." *Bullard v. Zimmerman,* 82 Mont. 434, 268 P. 512, 520 (1928).

An "occurrence" is an "event, incident, episode, circumstance," something that happens or takes place. The "occurrence" took place in the hospital and was recorded from the time of the child's birth on February 28, 1979, to the time of the last visitation on January 24, 1980, and a hospital report of February 6, 1980. The hospital "had actual notice of the occurrence" which gave rise to a claim. In its Answer Brief in this appeal, the hospital carefully avoided any mention of its actual knowledge.

True, we sit as a court of review to search the record for alleged errors committed in the trial court. On appeal, we do not consider questions which have not been passed upon below. *Miller v. Smith,* 59 N.M. 235, 282 P.2d 715 (1955); *State v. Quesenberry,* 72 N.M. 291, 383 P.2d 255 (1963). But, if in the record itself, we discover evidence such as hospital records, the truth of which is not denied by defendant, we do not sit idly by to deprive parties of fundamental rights. We must not allow "injustice" to prevail over "justice" in a court of law or equity. As a result, in an appeal, we cast aside the errors, omissions and mistakes made below and rules applicable thereto. This court is a judicial tribunal

engaged in the administration of justice. We adhere to a judicial attribute that parties should not suffer an injustice due to representation if a reasonable method can be found to avoid it.

This discussion does not cast any aspersions on the conduct of the trial court. It had no duty, in advance of a hearing, to study the case in order to resolve a perplexing problem of which it has no knowledge. In advance of a hearing, lawyers have a duty to submit memoranda to assist the court. In the instant case, the trial court had nothing before it other than arguments of lawyers. No request was made either that the trial court consider the affidavit and exhibits before a final order be entered, or that the order be set aside based upon this information.

The hospital's defense that plaintiffs failed to comply with § 41–4–16 should be stricken.

C. *Whether commencement of the notice provision is the day of occurrence is a question of fact.*

Section 41–4–16(A) reads in pertinent part:

> Every person who claims damages ... under the Tort Claims Act ... shall cause to be presented ... *within ninety days after an occurrence giving rise to a claim* ... a written notice stating the time, place and circumstances of the loss or injury. [Emphasis added.]

The statute is silent on the meaning of "an occurrence giving rise to a claim." It is a difficult and complex legal problem that demands a fair result to both the governmental entity and the person who claims damages.

*Absent "actual notice of the occurrence" by the governmental entity,* the notice provision is a condition precedent to the bringing of an action. The giving of the notice is jurisdictional. *Fry v. Willamalane Park & Recreation District,* 4 Or.App. 575, 481 P.2d 648 (1971); *Awe v. University of Wyoming,* 534 P.2d 97 (Wyo.1975); *Yotvat v. Roth,* 95 Wis.2d 357, 290 N.W.2d 524 (1980). See, *Espanola Housing Authority v. Atencio,* 90 N.M. 787, 568 P.2d 1233 (1977). It is not a statute of limitations. It creates a new liability unknown to the common law. It is a statute of creation that does not fix the time in which an action may be commenced. The time of commencement is fixed by a statute of limitations.

Avoiding the circumstances under which *Peralta v. Martinez,* 90 N.M. 391, 564 P.2d 194 (1977) became the opinion of this Court, Judge Wood held in this medical malpractice case that "the limitation period begins to run from the time the injury manifests itself in a physically objective manner *and* is ascertainable." [Id. 394, 564 P.2d 194.] Judge Wood now states:

> ... If *Peralta v. Martinez* may be applied, the time period for notice did not begin to run until the injury manifested itself in a physically objective manner *and* was ascertainable.

In other words, a notice "within ninety days after an occurrence giving rise to a claim" may be synonymous with a notice within ninety days (after an occurrence) when an injury manifested itself in a physically objective manner and was ascertainable. By this analogy, § 41–4–16(A) was changed into a "notice of injury" statute. If so, *Yotvat, supra,* relied on by the hospital is directly in point.

In *Yotvat,* plaintiffs' complaint was dismissed for failure to show compliance with the notice statute and for lack of jurisdiction. Plaintiffs discovered that they had a claim within the 90 day period but did not give notice until some six days after the period had run. The Wisconsin statute provided that notice be given "within ninety days of the event *causing the injury* ... giving rise to a civil action ...." [Emphasis added.] The court said that the statute "is a notice of injury statute ..." and:

> We conclude that the period in which notice must be given ... *runs from the event causing the injury ... regardless when the event is discovered by the claimant.* [Emphasis added.] [Id. 528.]

The Wisconsin statute adds a factor that is absent from the New Mexico statute—

"the event causing the injury." An "event" that causes an injury is an event of such nature, force and effect that a reasonably prudent person knows or should know that it has resulted in what would be called a "medical" injury. A "pain" can be classified as injury. *Herndon v. Albuquerque Public Schools*, 92 N.M. 635, 593 P.2d 470 (Ct.App.1978).

In 1914, Justice Shelton, in the case of *In re Burns*, 218 Mass. 8, 105 N.E. 601, 603 (1914) defined "injury" in common speech that has been generally adopted. It reads:

> ... In common speech the word "injury" as applied to a personal injury to a human being, includes whatever lesion or change in any part of the system *produces harm or pain or a lessened facility of the natural use of any bodily activity or capability*. If one by external violence had his optic nerve severed close to the brain, or its function destroyed so as to result in blindness, although nothing whatever had been done to the eyes themselves or to the structures immediately surrounding them, it yet would be said in common speech that his eyes had been injured to the point of uselessness. *Whatever part of the human body thus has been made inAPPLICable of its normal use so that practically it has ceased to be available for the purpose for which it was adapted, is certainly injured according to the common understanding of men. . . .* [Emphasis added.]

*In re Fitzgibbons' Case*, 374 Mass. 633, 373 N.E.2d 1174 (1978); *Workmen's Comp. v. Bernard S. Pincus Co.*, 479 Pa. 286, 388 A.2d 659 (1978); *Jennings v. Louisiana and Southern Life Ins. Co.*, 290 So.2d 811 (La. 1974); *Aetna Casualty and Surety Company v. Moore*, 361 S.W.2d 183 (Tex.1962); *Roper v. Kimbrell's of Greenville*, 231 S.C. 453, 99 S.E.2d 52 (1957); *Brown Shoe Company v. Reed*, 209 Tenn. 106, 350 S.W.2d 65 (1961); *Burlington Mills Corporation v. Hagood*, 177 Va. 204, 13 S.E.2d 291 (1941); *Wasmuth-Endicott Co. v. Karst*, 77 Ind. App. 279, 133 N.E. 609 (1922).

The "Notice of injury" statute requires an occurrence of such nature, force and effect that it "produces harm or pain or a lessened facility of the natural use of any bodily activity or capability." If the event is of such magnitude, or the injuries are of such degree as to compel notice as a matter of law, the 90 day notice commences to run from this event. If the event is trivial as a matter of law, one that is commonplace, ordinary, or insignificant, the 90 day notice does not commence to run even though casual or latent injuries subsequently develop into serious ones. If either event does or does not compel notice as a matter of law, it is proper to leave the matter to the jury under an appropriate instruction which states the plaintiff's duty to give notice in accordance with the statute. The jury shall say whether the circumstances of the event were such as would suggest to one of ordinary and reasonable prudence whether the 90 day notice commenced to run from the day of the event.

This rule is equally applicable under the New Mexico statute. It provides that notice shall be given "within 90 days after an occurrence giving rise to a claim." To give rise to a claim, the event must be of such magnitude, force and effect that it causes an injury. When this occurs as a matter of law, the 90 day notice commences to run the day of the event. Otherwise, the day of commencement becomes an issue of fact for the jury.

This fair and reasonable view is supported by *Southern Surety Co. v. Heyburn*, 234 Ky. 739, 29 S.W.2d 6 (1930); *Lennon v. American Farmers Mutual Insurance Co.*, 208 Md. 424, 118 A.2d 500 (1955); *Silver v. Indemnity Ins. Co. of North America*, 137 Conn. 525, 79 A.2d 355 (1951). These are insurance policy cases with provisions such as "any occurrence which might result in a claim," or notice "as soon as practical" which means an accident sufficiently serious to give rise to a claim for damages.

The reasoning is fluent. It all depends upon whether the occurrence is sufficiently serious to lead a person of ordinary intelligence and prudence to believe that it might give rise to a claim. The information about the occurrence ordinarily is peculiarly with-

in the knowledge of the person who seeks a claim for relief. Therefore, the duty is laid upon this person to give notice to the local government entity in accordance with law. No duty arises if the person, such as the mother of a minor child, is ignorant of the fact that an occurrence has taken place with reference to her child. It would not be reasonable to lay upon the mother the obligation to disclose information of which she is justifiably ignorant. The same is true if the mother knew the facts surrounding some event affecting her child which were trivial. The 90 day notice does not begin to run the day of the occurrence. As a result, no occurrence took place which gave rise to a claim within 90 days thereafter. Only, when a question of fact exists as to whether the occurrence gave rise to a claim, does the trier of the fact determine whether or not the 90 day notice commenced on the day of the occurrence.

This question of fact should be submitted to the jury.

The constitutional question has been left in abeyance. See *Martinez v. City of Clovis*, 95 N.M. 654, 625 P.2d 583 (1980), Sutin, J., specially concurring.